## Richmond

ANDREA T. MORRIS

v.

MARSHA HAMILTON

April 29, 1983.

Record No. 801921.

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, Russell, JJ., and Harrison, Retired Justice.

*Grover C. Wright, Jr.*, for appellant.
*(Robert H. Bennett; Biggs and Battaglia*, on brief), for appellee.
Case submitted on brief for appellee.

STEPHENSON, J., delivered the opinion of the Court.

In this appeal involving a bailment, we must decide what standard of care is imposed upon the bailee by the relationship.

There is no transcript of the evidence, and the facts are contained in a statement filed pursuant to Rule 5:9(c). Marsha Hamilton and Andrea Morris were guests at a dinner party attended by approximately 25 people. The party began about 7:00 p.m. and ended approximately 1:00 a.m. the following morning. Alcoholic beverages were served throughout the evening.

Approximately 11:30, while working in the kitchen, Hamilton removed her wristwatch and placed it on a counter. About midnight, the water in the house "went off," and Hamilton left the kitchen. Since she intended to resume her work when the water came on again, she left her watch on the counter. Hamilton went

outside, where she had an after-dinner drink with several other guests. After 10 to 15 minutes, she became ill and fled to a bathroom.

Shortly after Hamilton left the kitchen, Morris saw the watch on the counter. Fearing for its safety, she picked it up and carried it in her hand as she looked for Hamilton. Morris was unable to find Hamilton and cannot recall what she did with the watch. She thought she either gave it to Hamilton's fiance or put it somewhere in the house for safekeeping.

Hamilton's fiance testified that sometime after Hamilton became ill he began to look for her. As he passed through the kitchen, shortly after midnight, he saw the watch on the counter. He neither picked it up nor reported to Hamilton that he had seen it. When Hamilton came out of the bathroom, she and her fiance left the party.

The following day, Hamilton discovered she did not have her watch and returned to the house to retrieve it. A maid who was in the kitchen when Hamilton arrived told her she had not seen the watch. Although the house was searched thoroughly, the watch was never recovered.

Hamilton sued Morris alleging Morris was the bailee of the watch and that she negligently lost it while it was in her possession. Morris concedes she was a bailee. She contends, however, she acted gratuitously and therefore owed Hamilton a duty of only slight care. The trial court, sitting without a jury, rejected the bailment theory, instead finding for Hamilton on a pure negligence theory. The court ruled Morris had violated her duty to exercise ordinary or reasonable care of the watch, and that her negligence was the proximate cause of its loss.

■ Acting upon Morris' concession that she was a bailee, we decide the case with reference to bailment principles. Ordinarily, in order to establish a bailment, there must be a delivery by the bailor and an acceptance by the bailee. However, no formal contract or actual meeting of the minds is necessary. Indeed, "it is the element of lawful possession, however created, and duty to account for the thing as the property of another that creates the bailment, regardless of whether or not such possession is based on contract in the ordinary sense." *K-B Corporation* v. *Gallagher*, 218 Va. 381, 384, 237 S.E.2d 183, 185 (1977); *Crandall* v. *Woodard*, 206 Va. 321, 327, 143 S.E.2d 923, 927 (1965). For an alleged bailee to have possession, he must have both physical control

over the property and an intent to exercise that control. *K-B Corporation*, 218 Va. at 384, 237 S.E.2d at 185.

■ When, as here, one comes into possession of a chattel and exercises physical control over it, a bailment is created by operation of law. It is known as a constructive or quasi-bailment.

■ The evidence shows that Morris acted solely for the benefit of Hamilton. She therefore was a gratuitous bailee.

> A constructive bailee or bailee by operation of law, who has come into possession of personal property of another, ordinarily receives nothing from the owner of the property, has no right to recover from the owner for what he does in caring for the property, and is, in effect, an uncompensated or gratuitous bailee.

8 Am.Jur. 2d *Bailments* § 25 (1980).

■ A bailee who acts gratuitously is not held to the same standard of care as one who enters upon the same undertaking for pay. The latter owes a duty of reasonable or ordinary care, while a gratuitous bailee owes only a duty of slight care. Thus, in order for a bailor to recover from a gratuitous bailee, he must prove the bailee was guilty of gross negligence. *Dawson* v. *Fusco's Auto Service*, 178 Va. 350, 353, 17 S.E.2d 364, 365 (1941).

We hold, therefore, the trial court erred in ruling no bailment existed and in holding Morris to a standard of ordinary or reasonable care. Morris is liable for the loss of the watch only if she was guilty of gross negligence.

■ "[G]ross negligence is that degree of negligence which shows indifference to others as constitutes an utter disregard of prudence. . . . It must be such a degree of negligence as would shock fair minded persons. . . ." *Community Motor Bus Co.* v. *Windley*, 224 Va. 687, 689, 299 S.E.2d 367, 369 (1983). Ordinarily, gross negligence is an issue for decision by the factfinder. It becomes a question of law only when reasonable minds cannot differ about the conclusion to be reached from the evidence. *Id.*

■ Viewing the evidence and all reasonable inferences in the light most favorable to Hamilton, we hold as a matter of law that Morris' conduct was not sufficient to constitute gross negligence. Therefore, we will reverse the judgment of the trial court and enter final judgment for the appellant.

*Reversed and final judgment.*