## DOLOR D. SLONE

### v.

## GENERAL MOTORS CORPORATION, ET AL.

Record No. 940881

April 21, 1995

Present: All the Justices

*C. Richard Cranwell (Mark K. Cathey; Cranwell & Moore*, on briefs), for appellant.

*John D. Eure (Kenneth J. Ries; Ernest H. Eubanks, Jr.; Johnson, Ayers & Matthews; Rumberger, Kirk & Caldwell,* on briefs), for appellee General Motors Corporation.

*Melissa W. Scoggins (Daniel P. Frankl; Gentry, Locke, Rakes & Moore,* on brief), for appellee Fontaine Body & Hoist Company.

*Amicus Curiae:* (Rosewell Page, III; E. Duncan Getchell, Jr.; Darryl S. Lew; McGuire, Woods, Battle & Boothe, on brief) in support of appellees.

JUSTICE HASSELL delivered the opinion of the Court.

## I.

In this appeal of a judgment in a product liability action, we consider whether a plaintiff, who was injured when a dump truck he was operating "rolled over," has a viable cause of action against the manufacturers of the truck and the dump truck bed sufficient to withstand a motion for summary judgment.

## II.

The appellate record is presented to us in an unfamiliar procedural posture. The trial court granted the defendants' joint motion for summary judgment at the pleading stage of this proceeding; accordingly, there has been no trial on the merits. The trial court relied upon facts developed from the plaintiff's responses to the defendants' interrogatories and requests for admissions. Presumably, the trial court also relied upon factual allegations contained in the plaintiff's amended motion for judgment.

As we have recently stated, "[i]n our discovery rules, we have cautioned that discovery ordinarily should not supplant the taking of evidence at a trial." *Carson* v. *LeBlanc*, 245 Va. 135, 137, 427 S.E.2d 189, 190 (1993). Additionally, we have recently observed that "the decision to grant a motion for summary judgment is a drastic remedy which is available only where there are no material facts genuinely in dispute." *Turner* v. *Lotts*, 244 Va. 554, 556, 422 S.E.2d 765, 766 (1992).

## III.

We will state the facts and adopt inferences from those facts in the light most favorable to Dolor D. Slone, the non-moving party, "unless the inferences are strained, forced, or contrary to reason." *Bloodworth* v. *Ellis*, 221 Va. 18, 23, 267 S.E.2d 96, 99 (1980).

In November 1986, Slone purchased a dump truck bed from Helms Stone Yard in Roanoke. The dump bed was manufactured and designed by Fontaine Body and Hoist Company. A cab shield, also described as an overhang, which was not manufactured by Fontaine, was affixed to the dump bed sometime after the dump bed left Fontaine's possession. The cab shield was manufactured and installed on the dump bed by an unknown party.

Slone purchased a 1978 truck, consisting of a cab and chassis, from Jack Quesenberry in February 1987. The truck was manu-

factured and designed by General Motors. Slone and Quesenberry installed the dump bed on the truck.

On July 2, 1987, about 3:50 p.m., Slone drove the truck, with the dump bed attached, to a depot maintained by the Virginia Department of Transportation at Eagle Rock in Botetourt County. As Slone was preparing to dump a load of gravel, he "backed the truck up" to a gravel ramp.

Slone described the accident in his sworn answers to interrogatories. "Several feet from the edge of the dump site, the gravel began to crumble from beneath the subject vehicle. As the ground gave way, the subject vehicle flipped backwards and slid down the side of the dump site for a distance of approximately 60 feet. The subject vehicle came to rest upside down with its grill, hood, roof of the cab, and top of the dump bed all impacting with the ground." Slone "was crushed and trapped in the truck cab" and received serious permanent injuries, including brain damage.

Slone filed his amended motion for judgment against Stephen Ray Hickock, General Motors Corporation, and Fontaine Body and Hoist Company. Slone settled his claims with Hickock, an employee at the depot, and proceeded against General Motors and Fontaine.

Slone asserted numerous claims against General Motors. He alleged that General Motors was negligent and breached certain implied warranties because General Motors designed the truck body "with inadequate bracing and support thereby significantly increasing the risk that, in a foreseeable rollover of the truck body, the roof would easily cave in and cause passengers to suffer serious, painful and grievous bodily injuries." Slone alleged that General Motors' design of "the cab of the 1978 GMC truck body [failed to include] any type of crash padding that, in a foreseeable rollover of the truck body, would have prevented and/or mitigated the kind of serious, painful and grievous injuries suffered by Plaintiff Dolor Slone." Slone also alleged that General Motors failed to conduct adequate testing and failed to warn "of the unreasonably dangerous condition of the cab roof lacking adequate supports and braces that greatly increase the possibility of serious bodily injuries in the event of a foreseeable rollover."

Slone stated, in his answers to interrogatories propounded to him by General Motors that

there is a design defect in the construction of the cab of the truck in which Mr. Slone was injured. The cross sections of the roof support pillars and the windshield header are inadequate to support the weight of the inverted truck. This allowed the partial collapse of the roof when the vehicle dropped over or slid down the ramp on its roof. This partial collapse caused Mr. Slone[']s head to be trapped and crushed between the rim of the steering wheel and the windshield header.

Slone alleged that Fontaine was negligent and breached certain warranties related to the manufacture and design of the dump bed. Slone alleged that Fontaine "designed the . . . dump bed with an unsupported, unbraced and extraneous overhang that significantly increased the risk that, in a foreseeable rollover of the truck to which the dump bed was intended to be attached, the overhang would crush the truck cab and cause passengers serious, painful and grievous bodily injuries like the ones suffered by Plaintiff Dolor Slone." Slone also alleged that Fontaine failed to warn of "the unreasonably dangerous unsupported, unbraced and extraneous dump bed overhang that greatly increases the possibility of serious bodily injuries in the event of a foreseeable rollover." Further, Slone alleged that Fontaine "failed to conduct adequate testing to determine the unreasonable risk of foreseeable truck passenger injury due to the unsupported, unbraced and extraneous dump bed overhang."

General Motors and Fontaine filed a joint motion for summary judgment, asserting that they were entitled to judgment, as a matter of law, because Virginia does not recognize the doctrine of "crashworthiness." The trial court considered memoranda of law and argument of counsel and granted the motion for summary judgment. The trial court held that Fontaine could not be liable to Slone because the dump truck was modified after it left Fontaine's possession. Further, the court held that even assuming that Virginia recognizes the doctrine of "crashworthiness," General Motors has no liability to Slone. We awarded Slone an appeal.

Slone argues that the trial court erred by granting summary judgment because there are material facts in dispute, and summary judgment may not be used as a substitute for trial. Slone also argues that the trial court erred in granting the motion for summary judgment because "in the hauling and dumping indus-

try, roll-over accidents are foreseeable; consequently, whether . . . [General Motors] properly designed its truck cab to withstand a foreseeable drop/roll-over, whether . . . Fontaine properly designed its dump bed without a cab shield and whether . . . [General Motors] or Fontaine gave adequate warnings regarding use of the truck and dump bed are questions of fact for the jury."

General Motors contends that, even assuming Virginia recognizes the doctrine of "crashworthiness," the trial court properly found that General Motors did not breach any duties owed to Slone. General Motors also argues that this Court should not recognize the so-called "crashworthiness" doctrine.

Fontaine argues that the trial court properly granted summary judgment to Fontaine because the undisputed facts show that it did not manufacture any product that caused Slone's injuries. Fontaine also asserts that Virginia does not recognize a cause of action for "crashworthiness."

## IV.

### A.

■ We have repeatedly articulated the relevant principles that govern whether a manufacturer of a product owes a duty to a person injured by that product. We find no reason to confuse our well-settled jurisprudence by injecting the doctrine of "crashworthiness" and, therefore, we reject this doctrine.* Rather, we will apply the principles articulated in our precedent to ascertain whether the trial court properly granted the motion for summary judgment.

---

* "A crashworthy vehicle is defined as 'one which, in the event of a collision, resulting accidentally or negligently from the act of another and not from any defect or malfunction in the vehicle itself, protects against unreasonable risk of injury to the occupants.' The concept, in the main, concerns the dangers posed by the vehicle occupants' collision with the interior of the vehicle upon collision, or the intrusion of moving or standing objects, upon collision, into the passenger area.

. . . .

The crashworthiness doctrine does not, however, impose a duty on the manufacturer to design a car which is safe for all collisions. Rather, the theory of liability obligates the manufacturer to design a vehicle that protects the passenger from *unreasonable* risk of harm. The factors to be considered in determining whether the risk is unreasonable include the likelihood of the harm, the obviousness of the danger, the purpose for which the vehicle is to be used, the styling, the cost of reducing the risk, and the circumstances of the accident." *Madden, Products Liability* § 8.4 (2d ed. 1988).

■ Initially, we observe that a manufacturer is not required to supply an accident-proof product. *Besser Company* v. *Hansen*, 243 Va. 267, 276, 415 S.E.2d 138, 144 (1992); *Featherall* v. *Firestone*, 219 Va. 949, 963, 252 S.E.2d 358, 367 (1979); *Turner* v. *Manning, etc.*, 216 Va. 245, 251, 217 S.E.2d 863, 868 (1975).

■ In *Logan* v. *Montgomery Ward*, 216 Va. 425, 428, 219 S.E.2d 685, 687 (1975), we stated several principles which are pertinent here:

The standard of safety of goods imposed on the seller or manufacturer of a product is essentially the same whether the theory of liability is labeled warranty or negligence. The product must be fit for the ordinary purposes for which it is to be used. . . . Under either the warranty theory or the negligence theory the plaintiff must show, (1) that the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose, and (2) that the unreasonably dangerous condition existed when the goods left the defendant's hands.

In *Featherall* v. *Firestone*, we restated the principles that we applied in *Logan*, and we implicitly recognized that a manufacturer may be held liable for the foreseeable misuse of its product. We stated, "[a]nd there can be no recovery against the manufacturer for breach of these implied warranties when there has been an unforeseen misuse of the article supplied." *Featherall*, 219 Va. at 964, 252 S.E.2d at 367.

### B.

■ Applying the aforementioned principles, we hold that the trial court erred by granting General Motors' motion for summary judgment against Slone. As required by our precedent in *Logan*, *Besser*, and *Featherall*, Slone pled, in his negligence and breach of warranty claims, that the truck cab was unreasonably dangerous, that the unreasonably dangerous condition existed when it left General Motors' possession, and that the possibility of a "rollover," a misuse, was reasonably foreseeable on the part of General Motors.

■ It is true, as General Motors asserts, that the facts surrounding the accident are unique because the truck flipped over and slid 60 feet. However, we cannot say, based upon the pre-trial

record before us, that there was a misuse that was unforeseeable as a matter of law. Further, we cannot speculate or guess what evidence Slone may or may not be able to adduce at a trial on the merits to support his allegations.

We also hold that Slone's amended motion for judgment contains sufficient allegations against General Motors to support his claim of failure to warn. In *Featherall*, we adopted the following test:

The manufacturer of a chattel will be subject to liability when he

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

219 Va. at 962, 252 S.E.2d at 366 (quoting *Restatement (Second) of Torts* § 388 (1965)).

Slone asserted in his amended motion that the truck's roof was defective because it lacked supports and braces, that General Motors knew of the defect, and that the defect greatly increased the possibility of serious bodily injuries in the event of a "rollover." Slone also alleged that a "rollover" was foreseeable, and General Motors failed to exercise reasonable care to warn him of the truck's dangerous condition. Again, because the case was decided without a trial, we cannot speculate about what evidence Slone may or may not be able to present to support this allegation. We hold, therefore, that the trial court erred by granting General Motors' motion for summary judgment.

## C.

We hold that the trial court properly granted summary judgment on behalf of Fontaine. As we previously mentioned, Slone is required to show under either his negligence or breach

of warranty claims that Fontaine's product was unreasonably dangerous and that the unreasonably dangerous condition existed when the dump bed left Fontaine's possession. *Logan* v. *Montgomery Ward*, 216 Va. at 428, 219 S.E.2d at 687.

Even though Slone alleges that the cab shield contributed to his injuries, he admitted in the trial court that Fontaine did not manufacture or install the cab shield, and it was installed and manufactured by an unknown third party. Slone does not allege in his amended motion for judgment that Fontaine knew or should have known that a cab shield would be added to the dump bed once it left Fontaine's possession. Therefore, as a matter of law, Slone is unable to show that an unreasonably dangerous condition existed in the dump bed at the time it left Fontaine's possession.

## V.

Accordingly, we will affirm that part of the judgment of the trial court that entered summary judgment on behalf of Fontaine. We will reverse that portion of the judgment of the trial court that entered summary judgment on behalf of General Motors, and we will remand this case for further proceedings against General Motors.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

JUSTICE COMPTON and JUSTICE WHITING, dissenting in part.

We agree with the majority that the trial court properly entered summary judgment in behalf of the defendant Fontaine. We disagree, however, with the majority's conclusion that summary judgment should not have been entered for General Motors.

The motion for judgment alleges that:

[N]ear the top of the ramp and several feet from the edge thereof, the ramp began to crumble from beneath the Truck, and the Truck toppled and flipped backward down the steep side of the ramp for a distance of approximately sixty (60) feet.

In our opinion, this allegation is insufficient to allege a foreseeable use or misuse of the dump truck. Contrary to the majority, we do not think this is an allegation of the possibility of a "rollover" in the use of the truck as a dump truck. Rather, we read this allegation, coupled with the other allegations described by the majority, as a claim that the truck should have been manufactured to withstand a collapse of the ground beneath the truck, projecting the truck "down the steep side" of a 60-foot ramp.

The accident described in the pleading is one that could have happened to any vehicle next to such a ramp; nothing in the pleading indicates that the truck's use as a dump truck had anything to do with the collapse of the ramp. Accordingly, we read the allegation as one seeking to charge General Motors with the duty of supplying an accident-proof vehicle. And, as the majority notes, there is no such duty upon General Motors.

The majority concludes that a "rollover" qualifies as a "misuse" of this vehicle. In *Featherall* v. *Firestone Tire and Rubber Co.*, 219 Va. 949, 252 S.E.2d 358 (1979), the Court said, when there was an allegation of negligent failure to warn, the manufacturer of a product will be subject to liability if it knows or has reason to know that the chattel is or is likely to be dangerous for the use for which the chattel is supplied. *Id.* at 966, 252 S.E.2d at 369. The Court held the manufacturer of a pressure regulator "could have reasonably foreseen the danger which was inherent in the product when sold, that is, that the regulator would likely be used not as manufactured but without the locknut, given the facility with which the nut could be removed from the instrument." *Id.* Continuing, the Court stated that, as to the manufacturer, "misuse was foreseeable." *Id.*

As we have just pointed out, the claim that the plaintiff's truck turned over because earth crumbled beneath it is not an allegation of a foreseeable misuse of the truck as a dump truck. In *Featherall*, the pressure regulator was supplied by the manufacturer with the locknut affixed to an adjusting screw. The nut performed a distinct safety function and, along with the screw, could be easily removed from the device. The fact that the regulator would likely be used without the locknut was a foreseeable misuse of the product, giving rise to a duty to warn. That situation is entirely unlike the present case, in which nothing involving the use of the truck as a dump truck had anything to do with the collapse of the ramp, as we have stated.

According to the majority's reasoning, a jury should be permitted to decide that foreseeably a truck could be negligently driven into water, thus requiring the manufacturer to equip the vehicle with pontoons to avoid injury to occupants.

Thus, we would affirm the judgment of the trial court in all respects.