**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

TANAY D. ANDERSON; ROGER VANN
SMITH; HENRY VEAL, JR.;
GWENDOLYN IDELL SHAROFF; MICHAEL
SHAROFF; MARCUS A. ATKINSON, an
infant who sues by Kathleen
Atkinson, his next friend; JOHN W.
ATKINSON, JR.; TODD R. BACOTE;
LEROY S. BROWN; GUILLERMINA
CEDANO; FAJR CHESTNUT; HOLLY A.
CRENSHAW; TAMEA A. DUNN;
CHARLES A. DUNN, JR., an infant
who sues by Charles A. Dunn, Sr.,
his next friend; CHARLES A. DUNN,                    No. 94-2509
SR.; RICHARD GRAVES; DORYEL
GREAVES; SERWAH GRIFFIN; GEORGE
HAYES; DEITRA HINES, an infant,
who sues by Gloria Forde, her next
friend; JOHNNIE M. JONES; RUBY C.
JONES; AHMID KANU, an infant, who
sues by Serwah Griffin, his next
friend; ALHAJI KANU, an infant who
sues by Serwah Griffin, his next
friend; CHRISTINA KANU, an infant
who sues by Serwah Griffin, her
next friend;

AMOS L. PERSAVED; FRANCES REEVES; ERIC J. SCHORI; AJA SMITH, an infant, who sues by Catherine Smith, her next friend; CATHERINE SMITH; JAN SMITH, an infant who sues by Catherine Smith, her next friend; MOLLIE B. SMITH; EULA M. TYSON; SYLVIA VICK; LAUREN WILLIAMS; MARY WITCHER; MICHELLE D. WITCHER; an infant, who sues by Mary Witcher, her next friend; ANGELA YANKAH; SANDRA A. YANKAH, an infant, who sues by Angela Yankah, her next friend; SARIAH A. YANKAH, an infant, who sues by Angela Yankah, her next friend; STEPHANIE A. YANKAH, an infant, who sues by Angela Yankah, her next friend; INA YEARWOOD; TRACEY L. SOMERS; ANTOINETTE ARCHER; JESSIE HARRIS; JAMES JACOBSON; EMMA S. MANNS; MARY V. MCCORMICK; KISHLA R. MOORE; DOLORES SCOTT; ANN E. MACLEOD; PEARLINE COULTMAN; JOSEPH S. LEAK, JR.; JUNE R. SINCLAIR; CATHERINE GILDEA; KIMBERLY BYNUM; DELORES J. HOLLOWAY; HELEN RICHARDSON; JOANN CHASE; CHERYL WASHINGTON,
Plaintiffs-Appellants,

v.

NATIONAL RAILROAD PASSENGER CORPORATION, d/b/a Amtrak; CSX TRANSPORTATION, INCORPORATED,
Defendants-Appellees.

2

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Robert E. Payne, District Judge.
(CA-92-1040-2)

Argued: October 31, 1995

Decided: January 16, 1996

Before RUSSELL, WILKINS, and LUTTIG, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Stephen Edward Heretick, MOODY, STROPLE &
KLOEPPEL, LTD., Portsmouth, Virginia, for Appellants. William G.
Ballaine, SIFF, ROSEN, P.C., New York, New York, for Appellees.
**ON BRIEF:** Joseph T. McFadden, Jr., Raymond H. Strople,
MOODY, STROPLE & KLOEPPEL, LTD., Portsmouth, Virginia,
for Appellants. Stephen Jacobs, Kelly Reynolds Fogarty, SIFF,
ROSEN, P.C., New York, New York; David C. Bowen, Stephen R.
Jackson, WILLCOX & SAVAGE, P.C., Norfolk, Virginia, for Appel-
lees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellants filed the instant action after they were injured in the
derailment of a passenger train that was deliberately sabotaged by

3

criminal third parties. The district court dismissed some of the plaintiffs' claims and granted summary judgment for defendants on the remaining claims. Appellants challenge those rulings on three grounds. First, they argue that, in light of the common law duty of common carriers, the district court erred in dismissing their claim of "crashworthiness." Second, they argue that the district court abused its discretion in excluding the testimony of certain experts, and so it erred in granting summary judgment for defendants on the claim that the dispatch center was negligent in its response to the switch signal. And, third, they argue that the district court abused its discretion in excluding the testimony of a third expert, and so it erred in granting summary judgment for defendants upon the claim that they were negligent in the security measures at the track, switch, and signal. Finding no error, we affirm on the reasoning of the district court.

I.

On August 12, 1992, the Amtrak "Colonial" passenger train derailed, injuring some sixty passengers, the appellants in this case. The train derailed due to the actions of two saboteurs, Raymond Gary Loomis and Joseph Lee Bornman, who reversed a switch, directing the train onto a side track while it was traveling at 79 miles per hour.

In order to reverse the switch, Loomis and Bornman had to possess considerable ingenuity, strength, and knowledge of the exact design of the switch and electronic signal mechanism. After devoting the better portion of an hour to circumventing the various locks with industrial bolt cutters, the two men carefully waited until the train was past the last electronic checkpoint before throwing the switch, with the train somewhere between a mile and a quarter mile away, thus leaving a maximum of 46 seconds for the train, traveling at 79 miles per hour, to stop before it reached the switch.

Appellants in this case, paying passengers who were injured in the ensuing accident, filed suit against Amtrak, the owner and operator of the train, and against CSX, the owner of the track and switching equipment. The district court dismissed some of the causes of action and granted summary judgment for defendants on the remaining counts. Appellants herein appeal several of those rulings.

II.

Virginia state law controls this case. In February 1994, the District Court dismissed plaintiffs' claim that the Amtrak passenger cars were unsafe in the case of an accident, e.g., that they had unpadded, hard surfaces, seats that came loose, and inadequate luggage restraint systems. The district court characterized this as a claim of "crashworthiness," a doctrine adopted by some courts to hold automobile manufacturers liable for injuries caused by unsafe interior designs of cars -- the "second impact" of a driver with the inside of his car after an accident. The district court dismissed this cause of action on the reasoning of (and adopting) Blizzard v. National Railroad Passenger Corp., Civil Action No. 2:92cv428 (E.D. Va. June 18, 1993), which dismissed a similar claim in an earlier Amtrak derailment case because it determined that Virginia courts would not adopt the crashworthiness doctrine for passenger trains because railroad accident injuries are so much more rare than auto accidents (and therefore less foreseeable),[1] and because there are no relevant federal regulations concerning the interior design of a train, as there are for automobiles. Since Blizzard, the Virginia Supreme Court has considered "crashworthiness" and rejected it. Slone v. General Motor Corp., 457 S.E.2d 51 (Va. 1995). Although the Virginia Supreme Court did hold that, in the particular factual context it was then reviewing, there was a factual dispute over whether the possibility of truck rollover was a reasonably foreseeable misuse, id. at 54, it nonetheless expressly rejected the doctrine of crashworthiness, id. at 53.

Appellants argue that, regardless of this directly adverse precedent, the crashworthiness line of cases is inapplicable to their claim because those cases all involved product liability claims against vehicle manufacturers, whereas their claim is against a common carrier. They rely upon a string of cases, mostly quite old, that establish that common carriers

_____

[1] From 1978-82, out of 1.5 billion railroad passengers, only 10 fatalities and 1,006 injuries occurred in railroad accidents, as compared to 46,900 fatalities and 1,700,000 serious injuries in automobile accidents in 1989 alone. Id. at 8.

5

are bound to use the <u>utmost</u> care and diligence of very cautious persons; and they will be held liable for the <u>slightest</u> negligence which human care, skill and foresight could have foreseen and guarded against.

<u>Chesapeake & Ohio Railway Co.</u> v. <u>Hibbs</u>, 128 S.E. 538 (Va. 1925) (emphasis added).

Plaintiffs argue that they were injured by the unsafe conditions of the Amtrak car of which Amtrak had been on notice for several years. However, Virginia law also provides that a "common carrier is not an insurer of the safety of its passengers against all accidents, and is only liable where the injury complained of was proximately caused by its negligence," <u>id</u>. at 540, and "[u]tmost degree of care means no more than every care which is <u>practicable</u> by common carriers engaged in the business of transporting passengers," <u>Shamblee</u> v. <u>Virginia Transit Co.</u>, 132 S.E.2d 712, 714 (Va. 1963) (emphasis added).

In light of <u>Blizzard</u>, <u>Slone</u>, and the common law practicability limitations on the duties of common carriers, we hold that the district court did not err in its dismissal of the crashworthiness claim.

III.

The district court also granted summary judgment for defendants on plaintiffs' claim that the dispatch center was negligent in its response to the signal indicating the thrown switch. **2** As support for this claim, plaintiffs introduced the testimony of two experts, William Pugh and Wallace Holl, who testified that the dispatcher could have and should have acted quickly enough to prevent the collision. Although both experts had considerable general experience in railroads, the district court did not admit their opinions because they lacked specific experience in dispatching. The district court further held that, even if Pugh and Holl had met the requirements for giving

_____

**2** Importantly, plaintiffs do not allege that the dispatching <u>system</u> was negligently designed so that it did not allow the dispatcher to respond quickly enough to prevent the accident; rather, they allege that the dispatcher himself was negligent in his response (or lack thereof) to the reversed switch.

6

expert testimony, their testimony was conclusory, speculative, and lacked factual support because both experts ignored the enormous causation problems with plaintiffs' theory and simply asserted that the dispatcher could have acted quickly enough to prevent the accident.

Regardless of whether the experts had sufficient experience to testify, the district court certainly did not abuse its discretion in refusing to admit the experts' testimony, because they provided no support for the claim that the dispatcher could have been reasonably expected to notice the signal, contact his supervisor (as required by CSX regulations), contact the train, communicate the problem, and get the train to stop -- all within the 46 seconds (at most) that elapsed between when the saboteurs threw the switch and when the train derailed. And, because there was no additional evidence that the dispatcher could reasonably have prevented the accident, the district court did not err in granting summary judgment for the defendants.

IV.

The district court also granted summary judgment for defendants on the claim that they had been negligent in the security measures taken to protect the switch, particularly in light of prior acts of vandalism on and around that switch. In support of this claim, plaintiffs offered the testimony of Charles Penrod, a former security supervisor for two major railroads. Although Penrod testified that the vandalism was preventable through either switch point locks or spiking, the district court rejected his testimony because there was no reliable evidence that switch point locks had ever been used to prevent sabotage and only limited evidence that spiking had been so used (only five recorded instances in seventeen years, all involving either eminent threats of sabotage from temporary labor strikes or recurrent juvenile vandals reversing manually-operated switches). Likewise, the district court rejected Penrod's testimony that, in light of previous acts of switch vandalism, this vandalism was foreseeable; the district court concluded that the earlier vandalism, simple destruction of property, was not sufficiently similar to this act of sophisticated sabotage.

The district court did not abuse its discretion in excluding Penrod's testimony because he did not testify to sufficiently similar conduct, and it did not err in granting summary judgment for defendants on

7

this claim because there was no evidence to suggest that CSX or Amtrak should have foreseen saboteurs as sophisticated as these, and because CSX already had in place an advanced electronic system that would have alerted the train to the reversed switch had the vandals not known exactly how to circumvent it; therefore, the railroad cannot be held liable for the unforeseeable criminal activity of third parties.

As the Virginia Supreme Court has held, in another case of a reversed railroad switch causing derailment,

> if the act itself [of the vandal / saboteur] is an intervening, independent, efficient cause which is neither foreseen nor reasonably foreseeable by the defendant, it will break the causal connection between the defendant's negligence and the plaintiff's injury.

Baltimore & Ohio Railroad Co. v. Patterson, 129 S.E.2d 1, 4 (Va. 1963); see also Wright v. Webb, 362 S.E.2d 919 (Va. 1987) (holding motel owner not liable for criminal assaults committed in his parking lot by third parties, despite alleged "notice" from prior larcenies in the parking lot, because the prior crimes were against property rather than people and did not give rise to a sufficiently specific danger of assault upon business invitees).

CONCLUSION

For the reasons stated herein, we affirm the judgment of the district court.

AFFIRMED

8