388

## CIRCUIT COURT OF THE CITY OF RICHMOND

Shawn Hunter

v.

Commonwealth of Virginia et al.

March 26, 2003

Case No. LP-671-4

BY JUDGE RANDALL G. JOHNSON

This is an appeal from the General District Court of the City of Richmond. Plaintiff, a state inmate, claims that defendants were negligent in caring for his personal property when he was transferred to the Illinois Department of Corrections under an "Interstate Corrections Compact" between the two states in 1997. Plaintiff claims that because of that negligence, his property was lost. Although defendants' pleadings consistently refer to the Commonwealth of Virginia as the only defendant, plaintiff's initial pleading and all subsequent pleadings, both in the general district court and in this court, name as defendants the Commonwealth, the Virginia Department of Corrections ("VDOC"), and three VDOC officials, including Ron Angelone, VDOC's then-director. Since no motion has ever been made to dismiss VDOC or the individual defendants as having been improperly joined, they are still parties. The case is presently before the court on a motion for summary judgment which, although nominally filed only by the Commonwealth of Virginia, is deemed by the court to have been filed by the other defendants as well.

The appeal was noted on March 5, 2002. It was docketed in this court two days later. On April 17, 2002, defendants filed a motion for summary judgment. Plaintiff filed his response in opposition on May 3. Although Rule 4:15 of the Rules of the Supreme Court of Virginia requires a party making a motion to schedule a hearing, and although this court's Suggested Practices

and Procedures in Law Cases state that "[t]he party filing a motion, demurrer, etc., is responsible for scheduling a hearing after obtaining available dates from opposing counsel," Suggested Practices at 9, and although the Suggested Practices also make it clear that "any motion which could dispose of all or part of the case *should be made and argued* within 60 days of filing and in any event not later than 30 days before trial or they may be deemed to be waived," *id*. (bold and italic print in original), and although the parties were given notice on February 11, 2003, that the case had been set for trial on April 9, 2003, in accordance with the Suggested Practices since a trial date had not been set by the parties,[1] it was not until two days ago, March 24, 2003, that counsel for defendants called the court's motions secretary to schedule a hearing on defendants' summary judgment motion. A hearing was set for March 31. On March 20, however, four days before calling the court, defendants' counsel had filed a "Motion to Rule on Pleadings." In that motion, defendants argue that since plaintiff is a state prisoner and since the Virginia Prison Litigation Reform Act, Va. Code § 8.01-689 *et seq*., which became effective on July 1, 2002, provides that "whenever possible, the court shall rule upon the record before it," § 8.01-695, the court should "remove this case from the April 9, 2003, trial docket" and "rule on the pleadings now before it." Although the court will rule on the pleadings before it in this case, even at this late date, the court reminds counsel for defendants that hearings on dispositive motions in future cases must be scheduled promptly or the motion may not be considered, whether or not a prisoner is a party.

With regard to the motion itself, it is well settled that in the state courts of the Commonwealth, summary judgment can only be granted when there are no material facts genuinely in dispute. Supreme Court Rule 3:18; *Slone v. General Motors Corp.*, 249 Va. 520, 522, 457 S.E.2d 51 (1995); *Turner v. Lotts*, 244 Va. 554, 556, 422 S.E.2d 765 (1992). The purpose of summary judgment is to "expedite litigation with as few technicalities as possible and thus avoid common law procedural tactics interposed for delay, but it does not substitute a new method of trial where an issue of fact exists." *Carwile v. Richmond Newspapers*, 196 Va. 1, 5, 82 S.E.2d 588 (1954).

This action was commenced in district court by warrant in detinue. No motion for judgment was filed. It also appears that defendants have conducted no discovery on appeal. From the allegations and statements made by plaintiff in his response in opposition to defendants' motion for summary judgment, however, as well as from certain correspondence between plaintiff and VDOC

---

[1] The Suggested Practices provide that any case not set by the second calling of the docket after the parties are at issue will be set by the court.

officials concerning the events that make up plaintiff's claim, it is clear that there are no material facts genuinely in dispute and that defendants are entitled to judgment as a matter of law.

In his opposition to defendants' motion for summary judgment, plaintiff states that he has been a Virginia prisoner since 1987. On October 20, 1997, he was transferred to the Illinois Department of Corrections. His personal property, which consisted of a fan worth $18, 10 religious cassette tapes worth $70, a Bible worth $20, family photographs worth $100, shoes worth $50, and a radio/cassette player worth $50, was not sent with him. In January 1998, his personal property was mailed to him by R. C. Nixon, VDOC's coordinator of the Interstate Corrections Compact and a defendant in this action. For reasons not relevant to the case, including the physical condition of some of the property, Illinois prison officials would not let plaintiff have it. Instead, it was placed in storage. In November 2000, Illinois prison officials told plaintiff that they would no longer store his property and, in plaintiff's words, "gave [plaintiff] thirty days to dispose of the property or they would destroy it," which the court interprets as meaning plaintiff had thirty days to tell Illinois prison official where he wanted the property sent, not that plaintiff could physically dispose of it himself since, as just noted, he did not have possession of it.

Plaintiff also states that he wrote "a plethora of letters to all the named defendants" telling them of Illinois' ultimatum, but that he did not receive a response. In January 2001, he had all of the property sent to VDOC, together with a letter again informing defendants what had happened and requesting that the property be placed in storage. Plaintiff received a letter from Nixon dated January 26, 2001, which was apparently written before the property was received by VDOC. The letter stated, in part:

> Please be advised that this office cannot accept inmate personal property. The Virginia Department of Corrections Headquarters has no provisions to store inmate personal property. You are advised to send your personal property to a home address of your choice. If your personal property arrives at this office, it will be destroyed.

As noted, plaintiff had already sent the property to VDOC before he received the January 26, 2001, letter. When the property was received by VDOC, it was not destroyed. Instead, in a letter dated February 6, 2001, Nixon told plaintiff:

Please be advised that your personal property has arrived at this office. The Classification Supervisor has instructed me to inform you that your personal property will be donated to charity unless you provide this office with the address of your choice where you want your property shipped. You have 60 days to accomplish this.

By letter dated February 6, 2001, which was in response to Nixon's January 26 letter since plaintiff had not yet received Nixon's February 6 letter, plaintiff said:

I ask that you not destroy my property. The property was sent there way before I got this [January 26] letter. If you still have the property there, send it to: [name and address in Washington, D.C.].

If you have destroyed it please advise, so that I can file a tort claim in Richmond District Court about this. I shouldn't have to go through this.

By letter dated March 29, 2001, Nixon informed plaintiff:

This will serve to inform you that the Virginia Department of Corrections has shipped your personal property to the individual you designated to receive your property as follows: [same name and address in Washington, DC, that was provided by plaintiff].

Considering the above facts in the light most favorable to the plaintiff, the most plaintiff can prove at trial is that his property was the subject of a gratuitous bailment; that is, the entrustment of personal property by plaintiff, the "bailor," to defendants, the "bailees," for the sole benefit of the plaintiff with no reward or other gain for any of the defendants. *Dawson v. Fusco's Auto Service*, 178 Va. 350, 353; 17 S.E.2d 364 (1941). Such a bailment can exist even when the possession is not based on a contract or agreement between the parties. *K-B Corp. v. Gallagher*, 218 Va. 381, 384, 237 S.E.2d 183 (1977); *Crandall v. Woodard*, 206 Va. 321, 327, 143 S.E.2d 923 (1965). And where a gratuitous bailment exists, only slight care need be exercised by the bailee:

When the bailment is for the sole benefit of the bailor, the bailee being without reward, the law requires of the latter only slight

> diligence, and holds him responsible only for losses attributable
> to his gross neglect.

*Dawson, supra,* 178 Va. at 354 (quoting the *American and English Encyclopaedia of Law,* 2d ed., vol. 3, p. 745). *Dawson* also cites with approval *Stanton v. Bell,* 9 N. C. (2 Hawks) 145, 11 Am. Dec. 744, in which it was said that "[a] mere mandatary who receives no reward is only liable for fraud or gross neglect." 178 Va. at 354. Among the definitions of "mandate" contained in *Black's Law Dictionary* (5th ed. 1979) is "[a] bailment of property in regard to which the bailee engages to do some act without payment." At p. 867. Although that precise definition is not contained in the 7th edition of the work, which was published in 1999, that is obviously the definition the court had in mind when it used the term "mandatary"—"He [or she] to whom a mandate, charge, or commandment is given." *Id.*

In *Morris v. Hamilton,* 225 Va. 372, 302 S.E.2d 51 (1983), our Supreme Court said:

> [G]ross negligence is that degree of negligence which shows
> indifference to others as constitutes an utter disregard of
> prudence. . . . It must be such a degree of negligence as would
> shock fair minded persons. . . .

225 Va. at 375 (*quoting Community Motor Bus Co. v. Windley,* 224 Va. 687, 689, 299 S.E.2d 367 (1983)).

As the Court in *Morris* also noted, gross negligence is ordinarily an issue for decision by the factfinder. It becomes a question of law only when reasonable minds cannot differ about the conclusion to be reached from the evidence. *Id.* The Supreme Court in *Morris* held that it was a question of law there. This court holds that it is a question of law here.

From plaintiff's allegations and statements of fact set out in his opposition to defendants' motion for summary judgment and from the correspondence between plaintiff and defendants, it is clear that plaintiff cannot prove fraud or gross negligence on the part of any defendant. By writing to plaintiff at least three times and giving him the option of deciding where his property would be sent and then sending, or at least attempting to send, the property where plaintiff chose, defendants not only met their obligation to exercise slight care with respect to the property, they exceeded it. If the package containing the property was lost in the mail, that is not negligence attributable to these defendants. Even if defendants or a defendant mistakenly put the wrong name or address on the package when preparing to

mail it, or even if defendants or a defendant simply forgot to mail it, that would only be ordinary negligence. It would not indicate "an utter disregard of prudence." Nor would it "shock fair minded persons." Since it is clear that plaintiff cannot show that any of these defendants was guilty of fraud or gross negligence, summary judgment will be entered for them.