## Richmond

## K-B CORPORATION, T/A CENTRAL MOTOR COMPANY v. EDWARD GALLAGHER

September 1, 1977.

Record No. 760923.

Present: All the Justices.

*Howard B. Silberberg (Nathan L. Silberberg,* on brief), for plaintiff in error.

*Thomas J. Morris* for defendant in error.

COMPTON, J., delivered the opinion of the Court.

In this action *ex contractu* against an employer, arising from the theft of an employee's tools from the employer's premises, we consider the subject of bailments, and a matter of procedure in courts not of record.

Plaintiff Edward Gallagher sued K-B Corporation, t/a Central Motor Company, in the Alexandria General District Court by civil warrant in October of 1974 for $2,845.34 alleging "breach of bailment contract — theft of employee's tools." Central filed a written "Answer and Counterclaim" denying liability on the warrant and seeking recovery of $217.38 for plaintiff's alleged breach of a separate written agreement. After a trial, the district court entered judgment in favor of Central on plaintiff's claim but did not rule upon Central's counterclaim. Plaintiff appealed to the circuit court where a trial *de novo* of only plaintiff's claim was had before a jury, which found in favor of plaintiff and assessed damages for the value of the tools in the amount sued for in the warrant. The circuit court refused to permit Central to prosecute its counterclaim, ruling that no appeal had been perfected as to that claim. We granted Central a writ of error to the March 24, 1976 judgment of the circuit court entered on the jury verdict.

There is no transcript of the circuit court trial in the record on appeal. Instead, we must rely on a Rule 5:9(c) written statement of the testimony which shows the following facts.

In July of 1973 plaintiff was employed as a mechanic by Central, which was in the business of servicing trucks. In keeping with what the record shows to have been the custom of

the trade, plaintiff was required by defendant, as a condition of his employment, to furnish his own tools.

On November 19, 1973, plaintiff reported to work about 4:00 p.m. His tools were in defendant's shop building in the same place where he left them on the preceding working day. They were locked in his toolbox, to which he had the only key. The combined weight of the tools and box was between three and four hundred pounds. The box was mounted on casters. One caster was defective causing the wheel to jam when the box was rolled along the floor.

The shop building, which was located adjacent to several city streets, occupied almost two-thirds of a city block. It consisted of large "bays" and contained structural support columns. Some of defendant's mechanics chained their toolboxes to the columns but plaintiff did not. Defendant provided no specific area for its employees to store their tools when they were not working nor did defendant require plaintiff, or its other mechanics, to leave their tools on defendant's premises while they were not at work.

Shortly after 4:00 p.m. on the day in question, plaintiff was directed by "his supervisor" to take one of defendant's customers in defendant's truck to a Western Union office in Alexandria to pick up a money order. Plaintiff did not "deliver" his tools to any of his fellow employees nor did he request that the tools be "safeguarded" while he was away from his working area. Upon plaintiff's return 40 minutes later, he discovered that his tools and toolbox were missing. A mark on the floor, extending from the point where the tools had been located to an exterior door, indicated that the box had been dragged approximately 20 feet to the door, which opened onto one of the public streets. None of defendant's other employees who were on the premises at the time, including an off-duty uniformed policeman hired as a security officer by defendant to patrol the premises, observed the removal of plaintiff's tools. One of defendant's employees testified that the size of the trucks then being serviced in the shop "might" conceal from others in the area the route apparently used by the person or persons who took the tools.

The trial court ruled that as a matter of law the evidence established a bailment for the mutual benefit of the parties and that defendant was under a duty to exercise ordinary care in the protection of plaintiff's tools. Consequently, the issue of

defendant's primary negligence was submitted to the jury together with the issues of proximate cause and contributory negligence.

The first question we address is whether, under these facts, a bailment for the mutual benefit of the parties was established as a matter of law.

A bailment has been broadly defined as "the rightful possession of goods by one who is not the owner." 9 S. Williston, Contracts 875 (3rd ed. 1967). *See* R. Brown, The Law of Personal Property § 10.1 (3rd ed. 1975) [hereinafter cited as Brown]. Ordinarily, for a bailment to arise there must be a delivery of the chattel by the bailor and its acceptance by the bailee. *Crandall* v. *Woodard*, 206 Va. 321, 327, 143 S.E.2d 923, 927 (1965). But no particular formality or actual meeting of the minds is necessary to establish the relationship; "it is the element of lawful possession, however created, and duty to account for the thing as the property of another that creates the bailment, regardless of whether or not such possession is based on contract in the ordinary sense." *Id.* And in order for an alleged bailee to have possession, "there must be the union of two elements, physical control over the thing possessed, and an intent to exercise that control." Brown, *supra*, § 10.2 at 213-14.

Plaintiff argues that "the relationship of employer and employee is sufficient to create a bailment where the employee is required to supply tools of a substantial weight and is instructed to leave the premises where his tools are located." He contends that when the plaintiff was ordered to leave the defendant's property, a "constructive bailment" arose and that "no actual or constructive delivery was necessary." At the bar, plaintiff took the position that if he had merely been sent on an errand to another part of defendant's premises, a bailment would not have been created because he would have continued jointly in possession of the tools with his employer. However, the argument continues, when plaintiff left the confines of his employment on his employer's business, the defendant thereby acquired exclusive possession of the bailed property which continued during the 40 minutes plaintiff was away from the premises and a bailment for the mutual benefit of the parties existed requiring the defendant to exercise ordinary care for the safety of the tools. We do not agree; we are of opinion that the

defendant did not have exclusive possession of the plaintiff's property at the time of the theft.

The important elements of possession — physical control and an intent to exercise such control — are missing here. Manifestly, defendant did not have control of any kind over the individual tools within the toolbox because the box was locked and the plaintiff retained the only key. And while it may be said that defendant had a degree of control over the box as a whole, including its contents, because the box was located on premises owned by the defendant, nevertheless such control was not independent and exclusive so as to charge defendant with a duty of ordinary care to safeguard it. Other employees and defendant's customers had ready access to this box, which stood in an open area only about 20 feet from a public street.

Moreover, there is no evidence to show defendant ever intended to exercise any dominion over the box or its contents. For example, defendant provided no specific area for the storing of employees' tools; defendant did not require its employees to leave their tools on its premises while they were not at work; there is no indication in the evidence that defendant used or moved employees' tools while they were away from the place of employment — indeed when plaintiff arrived for work on the day in question, his tools were undisturbed and in the same place in the shop building where he left them the preceding working day.

Plaintiff relies heavily on *Johnson & Towers Baltimore, Inc.* v. *Babbington*, 264 Md. 724, 288 A.2d 131 (1972), in which two employees, who were likewise required to furnish their own tools, recovered against their employer in the trial court for loss of their tools when the employer's shop was burglarized. But there the employer "apparently" conceded that it was a bailee for mutual benefit who was under a duty to use ordinary care. 264 Md. at 727, 288 A.2d at 133. The basis for the affirmance by the Maryland Court of Appeals was that a jury issue had been presented as to whether the employer used ordinary care and diligence. So the question which confronts us here was not an issue in that case. See also *Collins* v. *Boeing Company*, 4 Wash. App. 705, 483 P.2d 1282 (1971), which is the subject of an instructive annotation, "Employer's Liability For Theft or Disappearance of Employee's Property Left at Place of Employment," found in 46 A.L.R.3d 1306.

■ We next address the procedural question. Nearly four months following the disappearance of the tools, the parties entered into a written agreement for their replacement. Central promised to purchase tools for plaintiff's use for a sum not to exceed $1500. Plaintiff agreed to reimburse Central in installments for the purchase price and to sign a promissory note for that amount. Central then bought the tools; but when they were delivered, plaintiff refused to execute the note.

In a counterclaim filed to the warrant in the general district court, Central sought recovery of $217.38 which it alleged it had paid, after plaintiff breached the agreement, to the seller of the replacement tools as "a cancellation and handling fee." As we have said, the judge of the district court did not rule on the counterclaim. No mention of the counterclaim was made in an opinion letter which dealt with the merits of the plaintiff's claim nor do the original papers from the district court contain any indication that the counterclaim was decided. And in view of the judgment there for the defendant on the plaintiff's claim, it cannot be said that the counterclaim was ruled upon in the court not of record by implication.

When the plaintiff appealed the adverse judgment on his claim, *see* Code § 16.1-106, defendant took no action with reference to the counterclaim. Assigning error to the circuit court's refusal to permit prosecution of the counterclaim, Central argues that there was no judgment in the district court from which to appeal or, alternatively, even if the court's inaction was to be considered final as to the counterclaim and adverse to the defendant, then the appeal by plaintiff "removed" the whole proceeding to the circuit court where the entire matter should have been heard *de novo* as provided in Code § 16.1-113.

We think the circuit court properly refused to allow the counterclaim to be asserted. Code § 8-239.1 provided, in part, that when a counterclaim is heard in the court not of record together with the original claim, the court shall "render . . . final judgment on the whole case. . . ." * While it is true the district court failed to comply with that requirement, apparently through inadvertence, this does not excuse defendant's inaction and failure to seek a definitive ruling on its counterclaim. Had defendant immediately called the oversight to the district

---

*Effective October 1, 1977, as a part of the revision of Title 8 of the Code, § 8-239.1 will be repealed and the substance of that statute will be found in Code § 16.1-88.01.

judge's attention, it could certainly have obtained a decision. Yet the defendant did nothing and allowed a claim it had asserted, and which it had a responsibility to prosecute, to go undecided. We hold that the defendant abandoned the claim by its inaction and the circuit court properly refused to allow it to be revived. Because of what we have just said, it is unnecessary for us to decide the issue raised by defendant's alternative argument, *supra*.

For these reasons, the action of the circuit court in refusing to allow the counterclaim to be asserted will be affirmed, the judgment in favor of the plaintiff against the defendant will be reversed, and final judgment will be entered here for the defendant on the plaintiff's claim.

*Affirmed in part, reversed in part, and final judgment.*