UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, O'Brien and Raphael

MARY HALEY SCOTT

MEMORANDUM OPINION[*] BY
v.      Record No. 0534-21-3          JUDGE STUART A. RAPHAEL
                                      MARCH 29, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF SMYTH COUNTY
Deanis L. Simmons, Judge

(Paul R. Cassell; Cassell & Crewe, PC, on brief), for appellant.
Appellant submitting on brief.

(Mark R. Herring,[1] Attorney General; Sharon M. Carr, Assistant
Attorney General, on brief), for appellee. Appellee submitting on
brief.


Appealing her conviction for grand larceny, Mary Haley Scott claims that she did not

intend to permanently deprive the victim of his property because she gave it back, more than a

year later, while awaiting trial. She also claims that the evidence failed to prove that the property

was worth more than $500. And she claims that the trial court erred by not allowing the victim

to be questioned about his pawnshop records. Finding the evidence sufficient for a reasonable

trier of fact to find her guilty beyond a reasonable doubt, we affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

BACKGROUND[2]

In the spring of 2018, Scott opened a thrift store—Joselena's—with help from veteran-pawnshop-owner James Adams. Scott borrowed "a substantial amount of money" from Adams to start the business. She agreed to sell items on consignment for Adams in exchange for twenty percent of the proceeds. The property belonging to Adams included seventy-two silver rings of various styles and sizes.

Adams and Scott also opened an ice-cream shop together in a small building on the same property, each owning half the business.[3] Adams paid ninety-nine percent of the start-up costs, funded the joint-checking account, and bought the food, equipment, and supplies.

Adams and Scott leased a large storage unit for overflow inventory. Scott signed the lease, but Adams paid the rent. To keep track of their respective property, they stored their items on different sides of the storage unit. Scott agreed to use Adams's items to replenish the merchandise as inventory was sold.

Adams asked Scott several times to return his seventy-two silver rings. She offered various excuses for not having them accessible but said she would "get" them to him.

At one point, Scott asked to borrow Adams's storage-unit key, claiming that she had misplaced hers. After Adams turned over the key, however, Scott failed to return it. At that point, Adams owned about two-thirds of the items in the storage unit.

---

[2] "In accordance with familiar principles of appellate review," we state the facts "in the light most favorable to the Commonwealth, the prevailing party at trial." *Blackwell v. Commonwealth*, 73 Va. App. 30, 40 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

[3] The items in the ice cream shop are not at issue in this appeal.

Several months later, when Adams was out-of-town on vacation, Scott emptied the thrift store, ice-cream shop, and storage unit. She left only a heavy woodworking machine and a few landscaping tools.

Upon his return, Adams drove to the ice-cream store looking for Scott. He discovered Scott's husband in the parking lot, removing the rest of the merchandise from the store. When Scott arrived, Adams asked her, "[W]here is the stuff out of Joselena's?" Scott replied, "[Y]our shelf time's up, you have nothing."

In December 2019, after Scott was indicted for grand larceny, she disappeared. Her friends reported her as missing and suggested that she had drowned in a lake, leading to a search in Virginia and West Virginia. Scott was ultimately found and arrested in West Virginia. She waived extradition and was returned to Virginia to stand trial. In the summer of 2020—more than a year after failing to return Adams's property—Scott delivered the rings to the sheriff to be delivered to Adams.

At Scott's bench trial in January 2021, Adams described the property he had consigned to Scott, including the seventy-two silver rings. His handwritten inventory and opinion about the value of the merchandise were received into evidence without objection. Scott's counsel sought to question Adams about complying with a record-keeping statute applicable to the transfer of items from the pawnshop to the thrift store. The Commonwealth objected, asserting that the recordkeeping statute had "nothing to do with this case." The court sustained the objection but told Scott she would have "leeway" in questioning Adams. Scott's counsel proffered that he would have asked Adams "questions related to the requirements of Code § 54.1-4009," which sets forth rules for "records that are required to be kept with regard to a pawn broker with regard to merchandise that is purchased for resale."

Testifying in her defense, Scott claimed that Adams "didn't consign anything" to her, "except for the rings" and a couple other items. She also denied fleeing from Virginia, claiming that she "didn't know about an indictment" when she left. On cross-examination, she first denied but then admitted to having been convicted of a crime involving lying—she was convicted in 2013 of giving false information to a police officer.

After denying Scott's renewed motion to strike at the close of the evidence, the trial court—"having weighed and assessed" the evidence "and the credibility of the witnesses"—found Scott guilty of grand larceny. The court sentenced her to a ten-year prison term (which the court suspended), two years of supervised probation, $3,790 in restitution, and a $1,000 fine.

STANDARD OF REVIEW

"When presented with a sufficiency challenge in criminal cases, we review the evidence in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Commonwealth v. Cady*, 300 Va. 325, 329 (2021). "Viewing the record through this evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Id.* (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018)). The conviction must stand "unless it is plainly wrong or without evidence to support it." *Sarka v. Commonwealth*, 73 Va. App. 56, 62 (2021) (quoting *Austin v. Commonwealth*, 60 Va. App. 60, 65 (2012)).

A deferential standard applies to the trial court's evidentiary rulings. "The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Warnick v. Commonwealth*, 72 Va. App. 251, 263 (2020) (quoting *Amonett v. Commonwealth*, 70 Va. App. 1, 9 (2019)). "An appellate court reviews a decision to admit or exclude evidence where no federal constitutional issue was raised under the

standard for non-constitutional harmless error provided in Code § 8.01-678." *Haas v. Commonwealth*, 299 Va. 465, 467 (2021).

ANALYSIS

While the Commonwealth argues that Scott received many items of property from Adams, Scott's concession that Adams consigned the seventy-two silver rings to her for sale at the thrift store is enough to resolve this appeal. So we limit our discussion to the rings.

    A. The evidence sufficed to show that Scott intended to permanently deprive Adams of the rings.

Larceny is "the wrongful or fraudulent taking of personal goods of some intrinsic value, belonging to another, without his assent, and with the intention to deprive the owner thereof permanently." *Creamer v. Commonwealth*, 64 Va. App. 185, 205 (2015) (quoting *Carter v. Commonwealth*, 280 Va. 100, 104-05 (2010)). "Intent, like any element of a crime, may be proved by circumstantial evidence as long as that evidence excludes all reasonable hypotheses of innocence flowing from it." *Id.* "Circumstantial evidence of intent may include a person's statements and conduct, including those 'after the events that constitute the charged crime.'" *Id.* (quoting *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011)).

Both parties agree that Scott came into possession of the rings through a bailment. "A bailment has been broadly defined as 'the rightful possession of goods by one who is not the owner.'" *Aufforth v. Aufforth*, 72 Va. App. 617, 626 (2020) (quoting *K-B Corp. v. Gallagher*, 218 Va. 381, 384 (1977)). "[I]t is the element of lawful possession, however created, and duty to account for the thing as the property of another that creates the bailment, regardless of whether or not such possession is based on contract in the ordinary sense." *Id.* (quoting *K-B Corp.*, 218 Va. at 384). "To have lawful possession, an alleged bailee 'must have both physical control over the property and an intent to exercise that control.'" *Id.* (quoting *Morris v. Hamilton*, 225 Va. 372, 374-75 (1983)).

- 5 -

Scott argues that the evidence failed to prove that she intended to permanently deprive Adams of the rings because they had no agreement about when the rings would be returned—or on what conditions—and because she eventually returned them. We disagree.

Although Scott at first testified that she had no agreement about what to do with the rings, she admitted on cross-examination that Adams gave her the rings to sell. She also displayed the rings at her store, showing her intent to sell them for Adams under their consignment agreement, for which Adams would receive eighty percent of the proceeds. Those facts evidence a bailment. The lack of an oral or written contract does not vitiate the bailment because "it is not necessary to have a formal contract or even an actual meeting of the minds." *Maiska v. Commonwealth*, 63 Va. App. 330, 339 n.3 (2014) (citing *Morris*, 225 Va. at 374).

A reasonable factfinder could conclude from the totality of circumstances that Scott's failure to deliver the rings to Adams, once he asked for them back, showed her intent to permanently deprive Adams of possession. When Adams asked Scott to return the rings, her authority to keep them was revoked. *E.g.*, 8A Am. Jur. 2d *Bailments* § 200 (2022) ("[T]he time for a termination of the bailment may be indicated at any moment by the bailor, provided this is done before the object of the bailment has been effected."). Scott offered various excuses for not delivering them when requested, saying, "Oh, I forgot," or that the rings were "at my house" or "locked in my safe." She admitted to retaining the rings even after closing the thrift store. As we explained in *Overstreet v. Commonwealth*, 17 Va. App. 234 (1993), once the bailment ends, "the use of the property by the former bailee constitute[s] a trespassory taking because possession of the property ha[s] constructively revested in the owner." *Id.* at 237.

Contrary to Scott's argument, the fact that Scott eventually returned the rings does not negate the inference that she had intended to permanently dispossess Adams of his property. Larcenous intent could be reasonably inferred from the totality of Scott's conduct: failing to

return the rings despite repeated requests; keeping Adams's storage-locker key; emptying the storage unit when Adams was out of town; closing the thrift store and ice-cream shop without telling him; spurning his reasonable questions about the whereabouts of his property with "your shelf time's up, you have nothing"; leaving the Commonwealth after being indicted; and delaying until months later to return the rings, while awaiting trial.

*Molash v. Commonwealth*, 3 Va. App. 243 (1986), does not hold, as Scott claims, that "if there is no agreement as to when to return the property, then there is no intent to permanently deprive." The Molashes were prosecuted for larceny of a truck under Code § 18.2-117, which provides that the failure to return property to the bailor "within five days from the time the bailee has agreed in writing" constitutes "prima facie evidence of larceny." *Id.* at 244 (quoting Code § 18.2-117) (emphasis omitted). There was no written bailment agreement in *Molash*, but that was not fatal to the prosecution. Instead, the trier of fact had to "consider all of the facts and circumstances to determine if there was a violation of the statute." *Id.* at 245. We found the evidence insufficient to show larcenous intent because the Molashes, having become "disillusioned with their employment," abandoned the tractor trailer but told the trailer's "lawful possessor" where to find it. *Id.* at 247. Scott, by contrast, kept the rings, failed to let Adams know their whereabouts, and left the jurisdiction after being indicted for grand larceny. *Cf. Langhorne v. Commonwealth*, 13 Va. App. 97, 102 (1991) ("[I]t is today universally conceded that the fact of an accused's flight, . . . [is] admissible as evidence of consciousness of guilt, and thus of guilt itself." (quoting *United States v. Ballard*, 423 F.2d 127, 133 (5th Cir. 1970))). It was not until over a year later, when Scott was facing trial, that she finally delivered the rings to the sheriff to return to Adams.

"The trial court, which had the opportunity to see and hear the witnesses," *Creamer*, 64 Va. App. at 206, could find from these facts that Scott intended to permanently deprive Adams of the rings and that she gave them back only as a last-second gambit to avoid conviction.

B. The evidence sufficed to show that the rings exceeded $500 in value.

To sustain a conviction for grand larceny for an offense committed in 2018, the Commonwealth needed to prove that Scott stole property worth $500 or more. Code § 18.2-95 (Supp. 2018).[4] Property value is "measured as of the time of the theft." *Parker v. Commonwealth*, 254 Va. 118, 121 (1997). Fair market value is "the price property will bring when offered for sale by a seller who desires but is not obliged to sell and bought by a buyer under no necessity of purchasing." *Glass v. Commonwealth*, 74 Va. App. 214, 221 (2022) (quoting *Robinson v. Commonwealth*, 258 Va. 3, 5-6 (1999)). "The Commonwealth can establish value in a number of ways, including the testimony of a lay person as to the property's fair market value." *Baylor v. Commonwealth*, 55 Va. App. 82, 87 (2009). It is well-established that "the opinion testimony of the owner of property, . . . is competent and admissible on the question of the value of such property, regardless of his knowledge of property values." *Otey v. Commonwealth*, 71 Va. App. 792, 800 (2020) (quoting *King v. King*, 40 Va. App. 200, 212 (2003)).

In this case, the trial court admitted into evidence a handwritten document prepared by Adams listing the fair market value of his property taken by Scott. The total of all items exceeded $6,000. The list included "72 silver rings" at $25 each, for a subtotal of $1,800. Adams testified to the value of his own merchandise based on his twenty-two years' experience

---

[4] In 2020, the General Assembly increased the dollar threshold for grand larceny from $500 to $1,000. *See* 2020 Va. Acts chs. 89, 401.

- 8 -

in the pawnshop business. When the trial judge asked Scott's counsel if he objected to admission of that evidence, counsel replied "No, ma'am."

Scott is mistaken that this evidence fell short because it did not establish the rings' value "at the time of" the offense. Adams testified that $25 per ring was a low estimate because, if sold at retail, the rings would be worth "significantly more." Scott herself agreed to sell the rings at the "thrift store" price of $25 each. That evidence sufficed for a reasonable trier of fact to conclude that the seventy-two rings were worth at least $1,800 at the time of the offense, well above the $500 threshold for grand larceny. To be sure, Scott testified that "[n]obody wanted to pay that much for the rings." But it was within the province of the trial judge, sitting as the trier of fact, to find the market-value testimony from Adams more credible.

The trial court found it significant that even if "limited to the jewelry, there would be sufficient evidence on which to find the Defendant guilty." We agree. Because Scott admitted that the rings belonged to Adams and because the evidence supported a valuation exceeding $500, a reasonable trier of fact could find Scott guilty of grand larceny beyond a reasonable doubt.

### C. The pawnshop records were irrelevant to Scott's retention of the rings.

Scott argues that the trial court erred by preventing her counsel from asking Adams about his pawnshop records. Counsel sought to probe whether Adams transferred the inventory on his handwritten list from his pawnshop to the thrift store. Scott suggested that the property claimed by Adams may not have "ever existed."

"Evidence is relevant if it tends to prove or disprove" or is "pertinent to" the "matters in issue." *Kenner v. Commonwealth*, 299 Va. 414, 425 (2021) (quoting *Clay v. Commonwealth*, 262 Va. 253, 257 (2001)); Va. R. Evid. 2:401 (defining relevant evidence as "having any tendency to make the existence of any fact in issue more probable or less probable than it would

be without the evidence"). "[E]vidence must be both relevant and material to be admissible, and it is inadmissible if it fails to satisfy either of these criteria." *Commonwealth v. Proffitt*, 292 Va. 626, 635 (2016) (quoting Charles E. Friend & Kent Sinclair, *The Law of Evidence in Virginia* § 6-1, at 342 (7th ed. 2012)).

Scott admits that the seventy-two silver rings belonged to Adams and that he consigned them to her for sale at Joselena's. Thus, even assuming for argument's sake that the trial court erred by disallowing Scott's questions about the pawnshop records, it would not negate the existence of the rings. So any such error would have been harmless. *Haas*, 299 Va. at 467.

CONCLUSION

Because there is no merit in either of Scott's assignments of error, her grand-larceny conviction must stand.

*Affirmed*.