**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 23-1148**

STUDCO BUILDING SYSTEMS US, LLC,

Plaintiff - Appellee,

v.

1ST ADVANTAGE FEDERAL CREDIT UNION,

Defendant - Appellant.

------------------------------------------

THE CLEARING HOUSE ASSOCIATION, LLC; NACHA; THE VIRGINIA CREDIT UNION LEAGUE; THE NATIONAL ASSOCIATION OF FEDERALLY-INSURED CREDIT UNIONS; THE CREDIT UNION NATIONAL ASSOCIATION,

Amici Supporting Appellant.

**No. 23-1766**

STUDCO BUILDING SYSTEMS US, LLC,

Plaintiff - Appellant,

v.

1ST ADVANTAGE FEDERAL CREDIT UNION,

Defendant - Appellee.

-----------------------------------------

THE CLEARING HOUSE ASSOCIATION, LLC; NACHA; THE VIRGINIA CREDIT UNION LEAGUE; THE NATIONAL ASSOCIATION OF FEDERALLY-INSURED CREDIT UNIONS; THE CREDIT UNION NATIONAL ASSOCIATION,

Amici Supporting Appellant.

---

Appeals from the United States District Court for the Eastern District of Virginia, at Norfolk.  Raymond A. Jackson, Senior District Judge.  (2:20-cv-00417-RAJ-LRL)

---

Argued:  December 12, 2024                                          Decided:  March 26, 2025

---

Before WILKINSON, NIEMEYER, and WYNN, Circuit Judges.

---

No. 23-1148, reversed and remanded with instructions; No. 23-1766, affirmed by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Wilkinson concurred.  Judge Wynn wrote an opinion concurring in part and concurring in the judgment.

---

**ARGUED:**  John Michael Bredehoft, KAUFMAN & CANOLES, P.C., Norfolk, Virginia, for Appellant/Cross-Appellee.  Chirag Haresh Patel, CLARK HILL PLC, Chicago, Illinois, for Appellee/Cross-Appellant.  **ON BRIEF:**  Adam B. Pratt, KAUFMAN & CANOLES, P.C., Williamsburg, Virginia, for Appellant/Cross-Appellee.  Myriah V. Jaworski, CLARK HILL PLC, Buffalo, New York, for Appellee/Cross-Appellant.  Noah Levine, Alan Schoenfeld, Marissa M. Wenzel, WILMER CUTLER PICKERING HALE AND DORR LLP, New York, New York, for Amici The Clearing House Association L.L.C. and Nacha.  Trevor S. Cox, Johnathon E. Schronce, J. Pierce Lamberson, HUNTON ANDREWS KURTH LLP, Richmond, Virginia, for Amici The Virginia Credit Union League, The National Association of Federally-Insured Credit Unions, and the Credit Union National Association.

---

2

NIEMEYER, Circuit Judge:

The ACH (Automated Clearing House) system, in which virtually every U.S. bank participates, functions electronically and automatically, processing over 33 billion transfers of funds among financial institutions each year, involving over $86 trillion. It is essential to the strength and efficiency of national commerce, for if those transfers were conducted manually, commerce would virtually grind to a halt.

Article 4A of the Uniform Commercial Code defines the exclusive rights and duties of financial institutions with respect to such funds transfers. In this appeal, we apply those principles to resolve the parties' rights and duties where payment orders for the transfers of funds misdescribed the account into which the funds were to be deposited.

Studco Building Systems US, LLC, a metal fabricator located in Webster, New York, regularly purchased steel from Olympic Steel, Inc., located in northern Ohio. The two companies had a close relationship, having done business with each other for over nine years. When Studco received invoices from Olympic, it paid them using ACH payments, which were made by electronic transfers of money from Studco's account with JPMorgan Chase to Olympic's account with its own bank.

In early October 2018, Studco received an email purportedly from Olympic, advising Studco that Olympic was changing banks and that Studco should thereafter make its ACH payments to Olympic's new account at 1st Advantage Federal Credit Union in Newport News, Virginia. The email provided Studco with the new bank account number and routing number. Consistent with the email, Studco redirected its next four ACH

3

payments, totaling over $550,000, to what it believed was Olympic's new account at 1st Advantage.

It turned out that the email was fraudulent, initiated by a person or persons who had maliciously hacked into Studco's email system and then effected a sophisticated scam by redirecting Studco's payments to an account that the scammers controlled. The scammers made off with the money and were never identified.

Studco, which bore the loss, commenced this action against 1st Advantage, seeking reimbursement from 1st Advantage based on its allegedly negligent failure to discover that the scammers had misdescribed the account into which the ACH funds were to be deposited. It claimed that if 1st Advantage had handled the transfers in a commercially reasonable manner, the loss would have been avoided. Studco's principal claim was grounded on § 4A-207 of the Uniform Commercial Code (which Virginia has adopted and codified at Va. Code Ann. § 8.4A-207), claiming that 1st Advantage was liable because it completed the funds transfers to the misdescribed account — an account for which the name did not match the account number. It also asserted several other claims, alleging fraud, conversion, breach of bailment, and similar violations.

Following a bench trial, the district court entered judgment in favor of Studco, awarding it $558,868.71, plus attorneys fees and costs. The court grounded the relief on Studco's § 8.4A-207 misdescription claim and its breach of bailment claim. The court found that 1st Advantage failed to act "in a commercially reasonable manner or exercise ordinary care in allowing [the withdrawal of] six-figures over the course of a month." It explained that had 1st Advantage implemented reasonable routines, they "would have

4

alerted 1st Advantage to the misdescription and possible fraud upon the posting of the first ACH transfer."

For the reasons that follow, we reverse. 1st Advantage deposited the ACH payments into the account *with the number specified in Studco's ACH payment order*, even though that account was not in fact held by Olympic. Under those circumstances, a bank such as 1st Advantage has no liability under § 8.4A-207 unless it had *actual knowledge* of the misdescription. Because there was no evidence of actual knowledge presented in this case, it was error for the court to have held 1st Advantage liable on a finding of negligence or commercial unreasonableness. It was also error for the court to have concluded that Studco's ACH deposit of funds into the 1st Advantage account was a bailment, subjecting 1st Advantage to bailment liability.

On Studco's separate appeal from the district court's order denying its request for punitive damages, we affirm.

I

On October 1, 2018, Studco received an email purportedly from William Georger, "Account Manager," at Olympic, Studco's steel supplier. The email informed Studco that Olympic had changed banks and that Studco should pay Olympic's invoices by ACH payments to its new bank account. The email read:

5

From: William Georger <william.georger@olysteel.nct>
Sent: Monday, October 1, 2018 1:35 PM
To: Cathy Diaz <accounts@studcosystems.com>
Cc: corporate.ar@olysteel.net
Subject: New Bank

Dear Customer,

First of all- we want to thank you for being such an important piece of the Olympic Steel story throughout the years. We're continuing to grow this year.

We recently made the corporate decision to change our major banking activities from Chase, Please note that effective immediately all payment should be remitted to our new bank information, Kindly let me know if you are the right person to send the new instructions to.

Should you have any questions, please feel free to reach out to me via email ,looking forward to continued growth and creativity together.

**Will Georger**

Account Manager

Mobile: 716.440.8180

William.Georger@Olysteel.com

Olympic Steel Inc.

www.olysteel.com

This e-mail and any files transmitted with it contain confidential and proprietary information. If you are not the intended recipient, or if you received this e-mail in error, you may not disseminate, distribute or copy this e-mail or any attached files. Please notify the sender immediately by e-mail that you received this e-mail by mistake, then delete it and all attached files from your system and destroy all copies. If you are not the intended recipient or if you received this e-mail in error, you are hereby notified that disclosing, copying, distributing or taking any action in reliance on the contents of this e-mail or attached files is strictly prohibited.

An account specialist at Studco responded, "Yes please send the new bank info to me." In response, Studco received a second email, again purportedly from William Georger at Olympic, stating, "Please find the attached our new bank instructions." The attachment read:

6

OLYMPIC**STEEL**
1 EASTERN STEEL ROAD
MILFORD, CT 06460 USA
PHONE: 203-878-9381

Date: 10/01/2018

**ACH / EFT INSTRUCTIONS.**

**Bank Information;**
Bank name: 1st Advantage Federal Credit Union
Routing number: 251480563

**Account Information;**
Account number: ■4713.
Account name:  Olympic Steel Inc

Email Remittance: Ach_Remittance@mail.com. Please include
the invoice number with your remittance.

Thanks for your cooperation.

*Will Georger*

Will Georger
Account Manager.

Studco did not verify the emails or the bank change to confirm the instructions, even though the communications contained several indicators of the emails' inauthenticity.  The purported Olympic emails originated from the domain name "Olysteel.net," which is different from Olympic's actual domain name, "Olysteel.com."  And the email address from which the emails came was different from the email address provided in the signature block of the same emails.  The emails were also poorly written, using commas instead of periods at the ends of sentences and omitting a capital letter at the beginning of a sentence.  In addition, the first email instructed that "all payment should be submitted to our new bank information," using "payment" in the singular and directing, nonsensically, that

7

payments be "remitted" to "information."  The emails were purportedly signed by William Georger with a western New York telephone number (716-440-8180), but the attached banking information, also purportedly signed by William Georger, listed a Connecticut address and telephone number (203-878-9381) for Olympic.  Finally, apparently no one at Studco questioned why Olympic would use 1st Advantage Federal Credit Union — a local credit union in Newport News, Virginia — when Olympic was based in northern Ohio.

A few days later, in accordance with Olympic's purported instruction and the new bank information, Studco began paying Olympic's invoices by ordering that ACH funds transfers be made to the "Olympic Steel Inc" account with the account number xxx4713 at 1st Advantage Federal Credit Union.  Four payments were so ordered, totaling $558,868.71.  The transferred funds were automatically and electronically deposited into the account bearing the number that Studco gave, xxx4713, although that account was not held by "Olympic Steel Inc," but by Lesa Taylor, a longtime customer of 1st Advantage.

As it turned out, Lesa Taylor, too, was duped into the scam when she answered an advertisement for employment and was hired as an assistant to real estate professionals. She agreed to use her account at 1st Advantage as part of her employment responsibilities and evidently believed that the deposits into and withdrawals from her account were for legitimate real estate business.

At the time of the deposits, 1st Advantage had in place a "DataSafe" system to monitor ACH transfers, which automatically generated and stored reports of each ACH transfer. The DataSafe reports included warnings if the identified payee on an ACH order did not exactly match the name on the receiving account.  Such warnings were

8

automatically generated for any discrepancy, as small as a missing initial, suffix, or misspelling or as significant as an entirely different name on the account, such as Lesa Taylor instead of "Olympic Steel Inc." According to the unrebutted testimony of 1st Advantage and the district court's finding, the DataSafe system generated hundreds to thousands of warnings related to mismatched names on a daily basis, but the system did not notify anyone when a warning was generated, nor did 1st Advantage review the reports as a matter of course.

The four ACH funds transfers were automatically deposited into the account associated with the number specified on Studco's ACH funds transfer order, the xxx4713 account at 1st Advantage. The reports generated for those deposits automatically included a warning of the mismatch: "Tape name does not contain file last name TAYLOR." The evidence at trial showed that no one at 1st Advantage read any of these DataSafe deposit reports or the warnings on them before 1st Advantage first learned of the scam from the president of Studco on November 21, 2018.

The FBI conducted an investigation and concluded that the scam originated somewhere in the near east or north Africa, probably in the United Arab Emirates, Nigeria, or Dubai. The scammers, however, were never identified, and none of the money was recovered. Studco ultimately paid Olympic "again" for the four invoices, thus incurring the total loss.

Studco commenced this action to recover its loss from 1st Advantage, whom it claimed could have prevented the loss by adopting "basic security standards" and otherwise acting in a commercially reasonable manner. In its eight-count amended complaint, it

9

alleged that 1st Advantage was liable for failing to refuse the ACH deposits directed to Lesa Taylor's account because the payment orders were to deposit them into the account of "Olympic Steel Inc," not Lesa Taylor. Studco alleged that this violated Virginia Code § 8.4A-207. It also alleged that 1st Advantage accepted the ACH deposits as a bailment and failed, as a bailee, to act with reasonable care. Finally, it alleged six additional counts, including claims for conversion, fraud, and a civil RICO violation under 18 U.S.C. § 1961 *et seq.* In addition to compensatory damages, Studco requested punitive damages.

After dismissing several claims, the district court conducted a bench trial on Studco's § 8.4A-207 misdescription claim, its bailment claim, and a fraud claim. Following trial, the court ruled in favor of Studco on the misdescription and bailment claims and ruled in favor of 1st Advantage on the fraud claim. As to the misdescription claim, the court stated:

> It is clear from the evidence presented that 1st Advantage did not maintain any routines, let alone reasonable routines, for communicating significant information to the person conducting the transaction. If 1st Advantage implemented reasonable routines for communicating information, the identification discrepancy recognized at the opening of the Account, the numerous alerts generated by the ACH transfers describing the misdescription of the Account, and the fact that Olympic Steel could not open an account at 1st Advantage would have alerted 1st Advantage to the misdescription and possible fraud upon the posting of the first ACH transfer. Accordingly, the Court finds that Studco met its burden at trial to prove by a preponderance of the evidence a misdescription of beneficiary in violation of Va. Code Ann. § 8.4A-207.

And as to the bailment claim, the court ruled that "1st Advantage did not act in a commercially reasonable manner or exercise ordinary care in allowing Taylor to withdraw six-figures over the course of a month." The court entered judgment for Studco in the

10

amount of $558,868.71, plus attorneys fees and costs, but denied Studco's claim for punitive damages. From the district court's judgment, 1st Advantage appealed.

Thereafter, Studco filed a Rule 59(e) motion to amend the judgment to include punitive damages in its favor in the amount of $350,000. The district court denied that motion, and Studco also appealed.

By order dated July 24, 2023, we consolidated the two appeals.

II

With respect to Studco's misdescription claim under Virginia Code § 8.4A-207(b), 1st Advantage contends that the district court erred by importing the equivalent of a negligence standard for determining liability. It argues that it is not liable under § 8.4A-207(b), because it lacked *actual knowledge* of the difference between the beneficiary's name of the account and the account number at the time the deposit was made. (Citing *First Sec. Bank of N.M., N.A. v. Pan Am. Bank*, 215 F.3d 1147, 1152–53 (10th Cir. 2000)). It asserts further that granting Studco's claim based on a standard of negligence or commercial reasonableness would be dangerous for the financial industry, which is critically dependent on automated funds transfers like the ones that occurred in this case.

The Uniform Commercial Code, which Virginia has adopted, regulates ACH funds transfers in Article 4A by providing "precise and detailed rules to assign responsibility, define behavioral norms, allocate risks and establish limits on liability" and therefore enabling the parties to these transfers "to predict risk with certainty, to insure against risk, to adjust operational and security procedures, and to price funds transfer services

11

appropriately." Va. Code Ann. § 8.4A-102 cmt. Consistent with these principles, the Official Commentary provides that Article 4A is "intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties" to such transfers. *Id.*; *see also Donmar Enters., Inc. v. S. Nat'l Bank of N.C.*, 64 F.3d 944, 949–50 (4th Cir. 1995); 3 James J. White et al., *Uniform Commercial Code* § 22.9 (6th ed. 2014) (noting that Article 4A preempts common-law claims, such as negligence and conversion, "that would create inconsistent rights, duties, or liabilities"). As we observed in *Donmar Enterprises*, the principles underlying Article 4A are important because "[t]he success of funds transfer systems is predicated on speed, efficiency, high volume, low cost, certainty, and finality." 64 F.3d at 948. "At bottom, Article 4[A] provides a framework for facilitating complicated transactions between sophisticated parties with competing interests." *Approved Mortg. Corp. v. Truist Bank*, 106 F.4th 582, 592 (7th Cir. 2024).

A "funds transfer" regulated by Article 4A begins with a "payment order" issued by an "originator" (Studco) to "a receiving bank" (JPMorgan Chase) to transfer funds to a "beneficiary's bank" (1st Advantage) for deposit into the account of the bank's "beneficiary" (Olympic). *See* Va. Code Ann. §§ 8.4A-103 to -104. When the payment order provides an account name that does not match the account number, as in this case, there is a "misdescription of beneficiary" as to which § 8.4A-207 specifies the rights and duties of the parties. As the Official Commentary to that section summarizes, § 8.4A-207(b) "deals with the problem of payment orders in which the description of the beneficiary does not allow identification of the beneficiary because the beneficiary is

described by name and by an identifying number or an account number and the name and number refer to different persons." *Id.* § 8.4A-207 cmt. 2.

Section 8.4A-207(b)(1) provides, as applicable here, that, "[i]f a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons" and if "the beneficiary's bank *does not know* that the name and number refer to different persons," the beneficiary's bank "may rely on the number as the proper identification of the beneficiary of the order." Va. Code Ann. § 8.4A-207(b)(1) (emphasis added). That provision goes further and states that "[t]he beneficiary's bank need not determine whether the name and number refer to the same person." *Id.* Thus, the provision protects the beneficiary's bank from any liability when it deposits funds into the account for which a number was provided in the payment order, even if the name does not match, so long as it "*does not know* that the name and number refer to different persons." *Id.* (emphasis added). And in this context, "'[k]nowledge' means actual knowledge," not imputed knowledge or constructive knowledge. *Id.* § 8.1A-202(b); *see also Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (defining actual knowledge to refer to where one has "subjectively recognized" the fact); *Cook v. Jones*, 606 F. App'x 131, 132 (4th Cir. 2015) (per curiam) ("Constructive notice is insufficient to show actual knowledge" (citing *Farmer v. Brennan*, 511 U.S. 825, 840–42 (1994))).

Allowing the beneficiary bank to deposit transferred funds automatically, based only on account number, promotes efficiency and certainty to the system. As the Official Commentary explains, "The processing of the order by the beneficiary's bank and the

13

crediting of the beneficiary's account are done by use of the identifying or bank account number *without human reading of the payment order itself.* The process is comparable to that used in automated payment of checks." Va. Code Ann. § 8.4A-207 cmt. 2 (emphasis added). The Commentary goes on to address the very circumstances before us, noting that "[i]n some cases the false number will be the result of error by the originator" and in others "fraud is involved." *Id.* Yet, it explains, the beneficiary's bank has "no duty to determine whether there is a conflict" between the account number and the name of the beneficiary, and the bank "may rely on the number as the proper identification of the beneficiary." *Id.*

Thus, if the beneficiary's bank deposits the funds into the account associated with the number designated in the payment order and it has no knowledge of any misdescription at the time of the deposit, it has no further liability. In these circumstances, the Uniform Commercial Code places the "risk of loss" on the person who dealt with the thief — in this case Studco — "whose remedy is against" the recipient of the funds (Lesa Taylor), the thieves (the unidentified scammers), or potentially the receiving bank (JPMorgan Chase). Va. Code Ann. § 8.4A-207(c)(2) & cmt. 3. The Commentary explains that "it is not unfair to assign the loss to . . . the person who dealt with the impostor and . . . supplied the wrong account number," because the originator (Studco) "could have avoided the loss if it had not used an account number that it was not sure was that of" the intended beneficiary. *Id.* As the Second Circuit has noted, "[T]here are sound policy reasons for limiting the right to seek a refund to the sender who directly paid the receiving bank." *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 102 (2d Cir. 1998). Most notably,

14

> [t]o allow a party to, in effect, skip over the bank with which it dealt directly, and go to the next bank in the chain would result in uncertainty as to rights and liabilities, would create risk of multiple or inconsistent liabilities, and would require intermediary banks to investigate the financial circumstances and various legal relations of the other parties to the transfer.

*Id.* Allowing otherwise "would impede the use of rapid electronic funds transfers in commerce by causing delays and driving up costs." *Id.*

With this regulation of funds transfers, the Uniform Commercial Code recognizes that "[t]he efficiency benefits of an automated system are undermined if a bank is not able to rely on its automated system but must independently verify there is no conflict between a beneficiary name and an account number." *First Sec. Bank of N.M.*, 215 F.3d at 1152. And this makes good sense. Countless discrepancies can arise inadvertently and harmlessly. For instance, the inclusion or omission of a suffix such as Jr. or a middle initial could trigger an alert, as could the listing of a surname prior to the first name. Requiring individualized review for meaningless differences such as these would be most impractical, time-consuming, and expensive and would impede the efficient transfer of funds, imposing gridlock on the financial system. The policy of the Uniform Commercial Code is clearly to facilitate funds transfers by enabling the beneficiary's bank to rely solely on valid account numbers when making deposits and not requiring it to examine and address every discrepancy.

In this case, the scammers duped Studco by posing as Olympic and then redirecting Studco's payments of Olympic's invoices to a new account that the scammers controlled. Thus, it was Studco who dealt with the thieves. And from those dealings, Studco ordered the transfer of funds to a particular numbered account (xxx4713), which it misstated was

15

the account of "Olympic Steel Inc," when in fact the account with that number was held by Lesa Taylor.   1st Advantage received the funds through the ACH system and automatically deposited them into account xxx4713, without any human intervention, as it was entitled to do under § 8.4A-207.  And while each transfer automatically generated a report with a warning of the misdescription, the reports were automatically stored in 1st Advantage's system and not read by any person at 1st Advantage.  Indeed, it was not 1st Advantage's custom to review such reports, nor would it have been practical to review them, as they numbered in the hundreds to thousands each day.  Rather, 1st Advantage relied on the account number that Studco provided, in accordance with the Uniform Commercial Code's design, and correctly deposited the funds into that account.  Because 1st Advantage had no *actual knowledge* of the misdescription at the time the deposits were made, it incurred no liability for making the deposits.

Although the district court correctly recognized that 1st Advantage could only be held liable for deposits into misdescribed accounts if it had *actual* knowledge of the misdescription, it nonetheless ruled in favor of Studco, finding that 1st Advantage had actual knowledge because it should have, with "due diligence," had such knowledge.  It explained,

> An organization has actual knowledge for a particular transaction "from the time it would have been brought to the individual's attention if the organization had exercised due diligence."  Va. Code Ann. § 8.1A-202(f). An organization exercises due diligence if it maintains reasonable routines for communicating significant information to the person conducting the transaction and there is reasonable compliance with the routines.  Va. Code Ann. § 8.1A-202(f).

16

Section 8.1A-202(f), however, on which the district court relied, addresses *when* an organization is put on notice or receives knowledge. *See* Va. Code Ann. § 8.1A-202 cmt. 3 (noting that subsection (f) merely clarifies that notice or knowledge is effective "only from the time" specified in the subsection). But § 8.1A-202(f) does not define knowledge. That is done in § 8.1A-202(b), which defines the term "knowledge" to mean "actual knowledge," not constructive knowledge, as the district court concluded. It was therefore error for the district court to construe "actual knowledge" to mean knowledge that could have been obtained with "due diligence."

Studco nonetheless contends that 1st Advantage's failure to maintain reasonable routines that would have prevented the transactions in this case imputes to 1st Advantage the knowledge required by § 8.4A-207(b). But this argument fails to recognize that § 8.4A-207(b) specifies that a bank may rely on the account number, and the Official Commentary further explains that the beneficiary's bank has "*no duty* to determine whether there is a conflict" between the account number and the name of the beneficiary. *Id.* § 8.4A-207(b)(1) & cmt. 2 (emphasis added). The beneficiary's bank therefore has no duty to adopt reasonable routines to check for conflicting names. *See Peter E. Shapiro, P.A. v. Wells Fargo Bank, N.A.*, 795 F. App'x 741, 749 (11th Cir. 2019) (per curiam) ("We agree with the district court that Shapiro's 'proposed due diligence standard would undermine the express purpose of Article 4A by reinserting human review into a process which is intended to be quick and automated'").

Accordingly, because the evidence showed that no individual at 1st Advantage had actual knowledge of the mismatch of name and account number when the ACH deposits

17

were correctly made into the account numbered xxx4713, as directed by the payment order, we reverse the district court's judgment on Studco's misdescription claim under Virginia Code § 8.4A-207.

## III

1st Advantage also contends that the district court erred in concluding that Studco's deposit of funds into an account with 1st Advantage created a bailment, imposing a duty of care on 1st Advantage as a bailee. It argues (1) that under Virginia law, a bailment is created only by transfer of a chattel (a physical thing), which did not occur in this case; (2) that any bailment liability is nonetheless preempted by Article 4A of the Uniform Commercial Code; and (3) that, in any event, Studco itself failed to exercise reasonable care and therefore is barred from recovery under Virginia's contributory negligence doctrine. (First citing *AlBritton v. Commonwealth*, 853 S.E.2d 512, 523 (Va. 2021); and then citing *Smith v. Va. Elec. & Power Co.*, 129 S.E.2d 655, 659 (Va. 1963)). We agree that Studco's deposit of funds into account xxx4713 at 1st Advantage was not a bailment.

Under Virginia law, "a general deposit in a bank is 'not a bailment.'" *Gardner v. Commonwealth*, 546 S.E.2d 686, 687 (Va. 2001) (quoting *Pendleton v. Commonwealth*, 65 S.E. 536, 538 (Va. 1909)). A bailment is "the rightful possession of goods by one who is not the owner." *K-B Corp. v. Gallagher*, 237 S.E.2d 183, 185 (Va. 1977) (quoting 9 Samuel Williston, *Contracts* 875 (3d ed. 1967)). "And in order for an alleged bailee to have possession, 'there must be the union of two elements, physical control over the thing possessed, and an intent to exercise that control.'" *Id.* (quoting Ray Andrews Brown, *The*

*Law of Personal Property* § 10.2, at 213–14 (3d ed. 1975)). "Ordinarily, for a bailment to arise there must be a delivery of the chattel by the bailor and its acceptance by the bailee." *Id.* (citing *Crandall v. Woodard*, 143 S.E.2d 923, 927 (Va. 1965)). Additionally, bailees are expected to return the chattel of goods to the bailor at the conclusion of the bailment. *Auto. Servs. Fin., Inc. v. Affordable Towing, Inc.*, 71 Va. Cir. 15, 16 (2006); *AdvanceMe, Inc. v. Shaker Corp.*, 79 Va. Cir. 171, 173 (2009).

In view of these well-established principles, we conclude that no bailment relationship was created in this case to give rise to bailment liability.

Studco, however, points to *First State Bank of Monroe v. Connoley*, 109 S.E. 301 (Va. 1921), to argue that "money held by [a] bank is a chattel, subject to a bailment." But the chattel in *Connoley* was not simply money, but a particular physical packet of cash, and the bailor was not a bank, but rather an individual. 109 S.E. at 302–03. In distinction, ACH funds transfers are accounting statements with respect to fungible currency that merely alter bank account balances, and Virginia law understands such deposits to be neither chattels nor goods. *See Gardner*, 546 S.E.2d at 687. Moreover, Studco's deposits were not time-limited, and Studco did not expect to receive the money back, as would be indicative of a bailment arrangement.

Accordingly, we reverse the district court's judgment in favor of Studco also on Studco's bailment claim. Because we conclude that no bailment was created, we need not address 1st Advantage's arguments that Article 4A of the Uniform Commercial Code preempts Studco's bailment claims and that Studco was barred from recovery under the doctrine of contributory negligence.

19

IV

Studco makes a separate argument for why we should affirm the district court's judgment, or at least remand the case, claiming that such relief is justified as a remedy for 1st Advantage's spoliation of evidence. Studco filed a spoliation motion in the district court, but the court did not reach the merits, denying the motion as moot. Studco now claims that its motion is in play and that we should recognize that 1st Advantage, while on notice of anticipated litigation, intentionally destroyed records that were developed by its Financial Crime Risk Manager system. That system monitored deposits and withdrawals from customer accounts and issued alerts when bank rules were violated or money laundering was suspected. Because 1st Advantage reviewed these alerts daily, Studco argues that 1st Advantage must have known of the misdescribed deposits made into Taylor's account and that its destruction of the alerts should trigger an adverse inference that 1st Advantage had knowledge of the misdescribed ACH deposits, thereby creating liability under Virginia Code § 8.4A-207.

Studco's spoliation argument in this case, however, is belied by the evidence in the record. 1st Advantage testified without dispute — and the district court so found — that its Financial Crime Risk Manager system generated no alerts with respect to Lesa Taylor's account. It also asserts that no data or documents related to Taylor's account were ever destroyed. The 1st Advantage executive testifying did acknowledge that in July 2019, after the events in question, 1st Advantage decided not to renew the services of the company that had operated its Financial Crime Risk Manager system and to hire a new one that

20

provided a system with more coverage.  But he also testified, without contradiction, that all documents related to Taylor's account were preserved and produced to Studco.

Since Studco has provided no evidence contradicting the fact that the Financial Crime Risk Manager system produced no alerts relating to Taylor's account and that all documents relating to that account were preserved and produced, we decline to affirm or remand based on Studco's spoliation motion.

## V

On Studco's separate appeal challenging the district court's order denying its claim for punitive damages, we affirm in view of our decision to reverse the district court's judgment in favor of Studco. *See Syed v. ZH Techs., Inc.*, 694 S.E.2d 625, 634 (Va. 2010) ("It is well-established that an award of compensatory damages is an indispensable predicate for an award of punitive damages, except in actions for libel and slander" (cleaned up)).

\*      \*      \*

The judgment of the district court, dated January 12, 2023, in case number 23-1148, is reversed, and that case is remanded to the district court with instructions to enter judgment in favor of 1st Advantage.  The order in case number 23-1766 is affirmed.

No. 23-1148, REVERSED AND REMANDED
WITH INSTRUCTIONS

No. 23-1766, AFFIRMED

21

WYNN, Circuit Judge, concurring in part and concurring in the judgment:

I fully agree with the majority's interpretation of the Uniform Commercial Code, which allows a bank to process an ACH deposit based solely on account number so long as the bank does not have actual knowledge of a misdescription between the account name and account number. And I agree that the actual knowledge requirement means that an "individual" employee at the bank must have actual knowledge of the misdescription at the time of deposit. Majority Op. at 17.

But in this matter, the evidence indicates that 1st Advantage may have received actual knowledge of a misdescription prior to Studco's final two deposits. On October 25, 2018, Lesa Taylor's two attempted overseas wire transfers triggered a federal Office of Foreign Assets Control alert, so 1st Advantage cancelled those transfers and (apparently unsuccessfully) suspended future wire transactions. [J.A. 213–14, 216] Keith Ward, the compliance manager for 1st Advantage, opened an "ongoing investigation" into the account, J.A. 380, which he described as "focused on wire activity," J.A. 219, although it also "looked at the account history," J.A. 379. The district court found that Ward "testified inconsistently" as to the scope of the investigation, that Ward "could not articulate the exact dates he reviewed [Taylor's] account history," and that Ward failed to create any documentation of the investigation even though Ward agreed that memorializing it would have been "best practice." *Studco Bldg. Sys. US, LLC v. 1st Advantage Fed. Credit Union*, No. 2:20-cv-417, 2023 WL 1926747, at *8 (E.D. Va. Jan. 12, 2023) (quoting J.A. 224). 1st Advantage allowed further deposits into the account on November 5 and November 13, for

22

more than $150,000, and did not stop Taylor from withdrawing some of those funds and wiring the rest to the scammers. [J.A. 482]

In my view, a factfinder could infer that Ward's investigation led to a 1st Advantage employee obtaining actual knowledge of a misdescription between account name and number prior to Studco's two November deposits. For example, had a 1st Advantage employee glanced at its DataSafe reports[1] during the investigation into Taylor's account history, the employee would have seen warnings of the misdescriptions on Studco's prior deposits. *See* J.A. 268–71 (DataSafe report, automatically generated on October 4, 2018, reading: "Warning . . . Tape name [on ACH deposit] does not contain last name Taylor.") So I cannot agree that "there was no evidence of actual knowledge presented in this case," Majority Op. at 5, and I would not grant 1st Advantage summary judgment on that basis.

Nonetheless, I agree with reversing the district court's judgment and granting summary judgment to 1st Advantage because the UCC's misdescription provision imposes a privity requirement. Thus, Studco must seek recovery of its funds from its own bank; it cannot recover directly from 1st Advantage.[2]

---

[1] DataSafe is one of 1st Advantage's "core processors" and automatically generates reports for incoming ACH deposits. J.A. 260[; *see* J.A. 261].

[2] 1st Advantage raised this issue below in substance but failed to raise it in its opening brief. [J.A. 503-04] The amicus brief for the Clearing House Association makes the argument on appeal (and 1st Advantage reiterates the argument its reply brief). [CHA Amicus Br. at 7; Reply Br. at 7] I therefore would excuse any forfeiture and address the issue.

The misdescription provision does not itself indicate what happens when a bank knowingly accepts a misdescribed deposit. But the UCC official comments[3] to the misdescription provision explain that we look to UCC Section 4A-402 for the remedy. U.C.C. § 4A-207 cmt. 2 (Am. L. Inst. & Unif. L. Comm'n 2023); *see Frankel-Ross v. Congregation OHR Hatalmud*, No. 15-cv-6566, 2016 WL 4939074, at *3 (S.D.N.Y. Sept. 12, 2016) (Section 402 "provides the remedial scheme" for Section 207). Section 402 states: "If the sender of a payment order pays the order and was not obliged to pay all or part of the amount paid, the bank receiving payment is obliged to refund payment to the extent the sender was not obliged to pay." Va. Code. § 8.4A-402(d). In other words, if a payment order was improper—as Studco alleges here—the bank receiving payment is obliged to refund the payment to the sender (here, Studco).

The catch is that the UCC defines the receiving bank (i.e. the bank receiving payment)[4] as "the bank to which the sender's instruction is addressed"—which, from Studco's perspective, is *Studco's bank*, JPMorgan Chase, and *not* 1st Advantage. *Id.*

---

[3] Virginia courts use the UCC official comments as "clarification" of UCC provisions. *Flintkote Co. v. W. W. Wilkinson, Inc.*, 260 S.E.2d 229, 232 (Va. 1979); *see also Ha v. Dominion Bank of N. Va.*, No. 97333, 1991 WL 834745, at *2 (Va. Cir. Ct. Jan. 24, 1991) ("The Official Comments to the U.C.C. are certainly not binding on the Court, but they do represent powerful dicta which should not be heedlessly ignored." (citing *In re Varney Wood Prods., Inc.*, 458 F.2d 435, 437 (4th Cir. 1972))).

[4] *See Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 101 (2d Cir. 1998) (holding that "receiving bank" and "bank receiving payment" are synonymous in this context). Note that Section 402(d) is discussing payment orders, which only have two parties: a sender and a receiving bank. Va. Code Ann. § 8.4A-103(a)(1). Funds transfers, on the other hand, consist of a "series" of "payment order[s]." *Id.* § 8.4A-104(a).

§ 8.4A-103(a)(4) [J.A. 370]. So Studco must recover from Chase, and Chase must recover from 1st Advantage. Studco cannot recover directly from 1st Advantage.

The UCC official comments to the misdescription provision explain the chain of recovery that must occur if a bank knowingly accepts a misdescribed deposit (as Studco argues occurred here). In that case, "Originator's Bank [here Chase] is not obliged to pay Beneficiary's Bank [here 1st Advantage]. Similarly, [Originator, here Studco] is excused from its obligation to pay Originator's Bank [here Chase]." U.C.C. § 4A-207 cmt. 2 (citation omitted) (citing *id.* § 4A-402(b)).

The Second Circuit explained this remedial scheme in *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97 (2d Cir. 1998), holding that Article 4A is intended "to effect an orderly unraveling of a funds transfer in the event that the transfer was not completed, and accomplished this by incorporating a 'privity' requirement into the 'money back guarantee' provision so that it applies only between the parties to a particular payment order and not to the parties to the funds transfer as a whole." *Id.* at 101. So, a sender of a payment may "seek refund only from the receiving bank it paid" and may not "skip over the bank with which it dealt directly, and go to the next bank in the chain." *Id.* at 102.

The only other circuit court to have addressed the issue, and every district court to have considered it save one, have also found such a privity requirement. *See Approved Mortg. Corp. v. Truist Bank*, 106 F.4th 582, 590–91 (7th Cir. 2024) (holding that the UCC's misdescription provision is subject to a privity requirement under Section 402); *Scura, Wigfield, Heyer, Stevens & Cammarota, LLP v. Citibank, NA*, No. 2:21-cv-12835, 2022 WL 16706948, at *4–6 (D.N.J. Oct. 3, 2022) (same); *Imperium Logistics, LLC v. Truist*

25

*Fin. Corp.*, 686 F. Supp. 3d 600, 604–05 (E.D. Mich. 2023) (same); A*mpliTech Grp., Inc. v. Truist Bank*, 746 F. Supp. 3d 1384, 1391 (S.D. Fla. 2024) (same); *cf. Zhejiang Matrix SCM Co. v. PNC Bank*, No. 23-cv-979, 2024 WL 1096534, at *4 (E.D. Pa. Mar. 13, 2024) (precluding the plaintiff from pursuing "*any* Article 4A claim" due to a lack of privity (emphasis added)). *But see Wheels Invs., LLC v. Wells Fargo Bank, N.A.*, No. 6:19-cv-658, 2021 WL 8895130, at *3 (M.D. Fla. Apr. 29, 2021) ("There is no expression of a privity requirement in Section 207.").

I would follow this near-consensus interpretation of the UCC's misdescription provision and, therefore, hold that 1st Advantage is entitled to summary judgment because Studco cannot recover directly from it.

For these reasons, I concur in part and concur in the judgment.

26